WESTON *v.* THE COLUMBUS SOUTHERN RAILWAY COMPANY.

To an action upon promissory notes given to a railway company as a subscription for stock therein, pleas to the effect that the company's agent who procured the subscription did so by representing that the road would be economically built, that the stock would be a good investment and would pay dividends, and by making other like representations, and that all these representations proved to be untrue, set forth no valid defence and were properly stricken on demurrer. *Bell* v. *Americus, &c. R. R.*, 76 *Ga.* 754.          *Judgment affirmed.*

August 27, 1892.

Promissory note. Stock subscription. Fraud. Before Judge BOWER. Dougherty superior court. October term, 1891.

The railway company sued Weston upon four promissory notes, each for the sum of $125, and each being for subscription to the capital stock of the company, payable respectively as twenty, forty and sixty miles of the proposed railroad and the whole line of the proposed railroad, not less than standard gauge, between Columbus and Albany, should have been graded, etc., of which fact publication by the directors of the company in a newspaper having circulation in the county of the subscriber's residence should be a sufficient notice. The defendant interposed a plea of the general issue, and certain other pleas and amendments thereto. All the pleas and amendments, except that of the general issue, were demurred to as insufficient, and defendant agreed that if the demurrer was sustained the plea

v 90-19

of the general issue should be included in the order sustaining the demurrer. The demurrer was sustained and the pleas dismissed, and the plaintiff was allowed to take a verdict for the full amount claimed to be due. Defendant alleges that the court erred in sustaining the demurrer, and that the verdict and judgment are without law to sustain them.

The pleas were: He does not owe the plaintiff anything on account of the notes sued on, because said notes were procured by fraud, and neither they, nor the subscription to the plaintiff's capital stock, would [have been] made or given had the plaintiff not concealed and kept from him the true and real facts by which the stockholders were to be required to pay their subscriptions and then defrauded of its true value. Col. Nelson Tift, a highly honorable and reliable gentleman and a shrewd and successful financier, in whom this defendant had the most implicit and unbounded confidence, acted as the agent and general director for the plaintiff in procuring the said subscriptions and notes sued on, and had full power and authority to act in all of said matters, because the fruits of his faithful and honest labor were accepted by the plaintiff, to wit, subscriptions to the capital stock of plaintiff, for a part of which this defendant is now sued in the case. In order to procure and secure said subscriptions and on the faith of which this defendant was induced, and did wholly act, Colonel Nelson Tift not only entered a large subscription on his own account, or on account of firms in which he was a partner and for which he was liable, but he did, both in public speeches and in private conversations and solicitations to secure said subscriptions, tell this defendant and others generally, that the management of said road was in good, safe and reliable hands, headed by Col. G. Gunby Jordan, a prominent, reliable and wealthy capitalist of the city of Columbus, Georgia; that it would be honestly, cheaply and economically

built; that coming through the fertile, well settled, highly cultivated and abundantly productive and wealthy country it did, and connecting the two prosperous cities of Columbus and Albany, it would not only be a safe, but a profitable investment, and pay the holders thereof good and remunerative dividends; that the stock would be par; and to convince the public of his honesty in all said statements, actually gave to one of said subscribers his written promise to redeem and take up his stock when it was issued, actually at par. Now, upon the faith of the conduct and actions of the plaintiff through its agent, Col. Nelson Tift, this defendant not only had the right to, but did rely and act and enter into the contract sued on.   Col. Nelson Tift, as the agent and vice-president of the plaintiff, secured from defendant the subscription to the capital stock of the plaintiff, for which the notes sued on were given; to secure the said subscription and notes said Tift represented, in both his private talks and entreaties as well as his public speeches, that the country through which said road [ran] was fertile and productive and already settled up, and was a fine agricultural country; that the corporation was in honest and careful hands, and would be cheaply and economically built; that it would be a good investment, and pay a dividend from the time it was completed.   Knowing that said agent had much experience in such matters, and relying on the correctness of his statements, defendant incurred said liability. On the contrary of said representations, this defendant avers that the parties in control of plaintiff, instead of building said road cheaply and economically, actually destroyed its value in the extravagant and reckless contract made therefor, to wit: $2,000 in cash, $15,000 in first mortgage bonds and $10,000 in preferred stock, and did incumber said road in all to the amount of $45,000 per mile, when the actual cost of said road, built in the cheap and inexpensive style in which it was,

should not and did not cost over $8,000 per mile; that said extravagance and waste in the building of said road was not only in violation of the contract, understanding and agreement on which said subscription was secured, but it rendered the common stock of said company, which was to be issued for and on payment of said subscription, utterly and hopelessly worthless, because said road is not worth over $7,000 to $8,000 per mile. And instead of paying a dividend, said road does not and cannot pay its fixed charges, burdened as it is with its unreasonable construction expenses aforesaid. Defendant was not asked to make a donation, which would be the result of the payment of his subscription, to a corporation so hopelessly burdened, but he was asked to make an investment, a good investment, of his hard earned money. Relying solely on the promises of economy and good investment aforesaid, he made his said notes; and said promises having been disregarded and violated was a fraud on this defendant and releases him from all liability on account of his contract, because the consideration has failed and there is no consideration therefor.

D. H. POPE, for plaintiff in error.

LITTLE & WIMBISH, WOOTEN & WOOTEN and WORRILL & LITTLE, *contra.*