John Swan v. T. L. Mathre, Appellant.

**Fraudulent Representation: BONA FIDE PURCHASER.** A statement by the promoter of a corporation, that stockholders would receive from ten to twenty-five per cent. on their money paid for stock, is an expression of an opinion, and the fact that the corporation became insolvent and ceased to do business six months later, does not invalidate a note given in payment for stock.

SAME: *Evidence.* In an action on a note given in payment for stock, brought by a purchaser before maturity, the defense was that the note was void for want of consideration, and for fraud in its inception, and that plaintiff had knowledge of its invalidity when he purchased it. *Held,* evidence as to the insolvency of the corporation, as to plaintiff's knowledge of the insolvency, as to the sum plaintiff had paid for his own stock in the corporation, and as to why he did not sue the indorser of the note, is irrelevant, and inadmissible.

*Appeal from Hamilton District Court.*—Hon. B. P. Bird-sall, Judge.

Saturday, October 16, 1897.

Action at law to recover the amount of a promissory note. After the evidence had been submitted, the district court sustained a motion of the plaintiff for judgment upon the note, and rendered judgment in his favor for costs. The defendant appeals.—*Affirmed.*

*D. C. Chase* for appellant.

*Wesley Martin* for appellee.

Robinson, J. — The note in suit was made by the defendant on the twenty-fifth day of June, 1891, for the sum of one hundred and twenty-five dollars, payable on or before two years after its date to Tjernagel Bros., with interest at the rate of six per cent. per annum after one year. It was given for capital stock of an incorporation known as the Scandia Publishing and Printing Company, and was transferred to the plaintiff by an indorsement in blank. The defendant alleges that the note was procured by means of false and fraudulent representations, without consideration, and that the plaintiff knew of the fraudulent character of the note before he obtained it, and is not an innocent purchaser for value. The Scandia Publishing and Printing Company was located at Story City, and appears to have been organized by Tjernagel Bros. in March or April, 1891. L. J. Tjernagel, who, we infer, was a member of that firm, solicited and finally prevailed upon the defendant to take some of the capital stock of the com-

pany, and to give the note in suit, and another for a like amount, in payment for it. To make the sale, Tjernagel represented to the defendant that the capital stock of the company was fifty thousand dollars, one-half of which was to be retained by Tjernagel Bros. and the remainder was to be sold; that the stock was worth fifty thousand dollars; that the company was running nights; that it was to buy a Norwegian paper called *Amerika,* and would make one of the largest printing companies. The affairs of the company did not prosper; the business was not profitable; the company became insolvent, and it ceased to do business in November or December, 1891. The plaintiff and L. J. Tjernagel became partners in the banking business in the year 1889. In January, 1891, Tjernagel withdrew from the bank all his investments, and had no interest in it, nor control of the business, after that time, although his name continued to be used therein until the year 1892. In March, 1891, the plaintiff became a stockholder of the Scandia Company. At different times in the spring of that year he purchased notes which had been given for capital stock, and on the eighth day of August, 1891, he purchased of L. J. Tjernagel the note in suit, with other notes to the amount of about one thousand five hundred dollars, paying therefor the face of the notes, less the regular bank discount. The claim of the defendant is that the note was void by reason of want of consideration and fraud in its inception; and that the plaintiff, by reason of his connection with the company and with Tjernagel, and the information he obtained through them, was chargeable with knowledge of the invalidity of the note at the time he purchased it. The burden of proving the claim thus made was upon the defendant.

I. The defendant stated that, to induce him to purchase stock, and give his notes, Tjernagel stated

that "I would have so big a per cent. on my money; I would have from 10 to 25 per cent. on my money."

A motion to strike that part of the testimony was sustained, and of that ruling the defendant complains. We think it was correct. The company had been but recently organized, and the statement of Tjernagel was clearly but an expression of opinion in regard to what would be done in the future. It was not a representation as to what had been done, nor respecting an existing condition. The false statements which were held to be material in *Parks v. Burbank*, 58 Iowa, 707, and *McKown v. Furgason*, 47 Iowa, 636, were in regard to alleged existing facts, or what was alleged to have been done, and were not mere expressions of opinion.

II. The appellant complains of numerous rulings of the court in excluding answers to questions which he had asked. Among such questions were some asked the plaintiff, as follows: "Was this insolvent, this Scandia Co? Is it a fact that as stockholder you knew the Scandia Co. was insolvent at the time you took them? State whether or not the stock of the Scandia Co. was paid up. How much did you pay for your stock? Why did you not sue Tjernagel Bros. if they were indorsers of the note?" Numerous other questions of a somewhat similar character were also asked, and objections thereto were sustained. We are of the opinion that these rulings, so far as they have been commented upon by the appellant, were correct. The answers sought, so far as they were indicated by the questions, would not have tended to establish any issue in the case. Whether the Scandia Company was insolvent, whether the plaintiff knew that it was insolvent when he purchased the notes of its stockholders, whether its stock was paid up, what the plaintiff paid for his stock, and why he did not sue the indorsers of the note in controversy, were all matters which

did not relate to the alleged fraud in the inception of the note, nor to t͡ e knowledge of that fraud possessed by the plaintiff when he purchased it. The defendant testified, it is true, that Tjernagel stated to him that "there was fifty thousand dollars capital in there, and it was worth that much." But the defendant also testified in regard to the same conversation, in substance, that he did not recollect whether Tjernagel said how much the shares were then paying annually, and that he "could not just say whether he said whether the stock was paid up, or what it was really." It is clear that the statements of Tjernagel upon which the defendant relied were in the nature of mere expressions of opinion as to present values and future earnings, and statements in regard to the plans of the company, which do not afford the defendant any ground for relief in this case, however much he may have been misled by them.

III.   We have read the evidence submitted to us with care, and reach the conclusion that it would not have sustained a verdict for the defendant, and that the case was properly taken from the jury. It is not shown that the note in suit was without consideration. The actual financial condition of the company when the note was given does not appear. The value of the material, machinery, and type owned by the company is shown not to have exceeded fifteen thousand dollars in value; but there is not competent evidence as to the value of all of the assets of the company, although one witness, not shown to know the condition of the company, stated, in answer to a question as to the value of all the property of the company at the time of its organization, "Well, I do not really just remember, but I guess that is about all,—from twelve thousand dollars to fifteen thousand dollars." So far as we are advised, there was a sufficient consideration for the note when it

was given. The plaintiff is not shown to have been concerned in the management nor responsible for the failure of the company, nor to have had any actual or constructive knowledge, when he purchased the note in suit, of the fraud, if any, alleged to have been perpetrated upon the defendant to obtain it. We conclude that the judgment of the district court must be, and it is, AFFIRMED.