The First National Bank of Ottumwa, Iowa, Appellee, v. P. L. Fulton, Appellant.

**Corporations:** STOCK: CONSIDERATION OTHER THAN MONEY. The note
1 · of a solvent maker given for corporate stock thereafter to be issued is not void, because in violation of the statute providing that when it is proposed to pay for capital stock in property or other thing than money, the Executive Council shall ascertain the value thereof, especially at the instance of the maker. The purpose of the statute is to protect the corporation against the issuance of stock for property, services or other thing of fictitious value, rather than for the benefit of the purchaser.

**Same:** FAILURE OF CONSIDERATION: EVIDENCE. Proof of partial fail-
2 ure of consideration will not support a plea of total failure. In this action upon a promissory note the evidence does not establish total failure of consideration.

**Same:** FALSE REPRESENTATIONS. Representations concerning the value
3 of corporate stock which relate to no eixsting facts, but are mere expressions of opinion as to its future· value, do not of themselves amount to false representations, such as will avoid a note given for the purchase price of the stock.

**Negotiable instruments:** HOLDER IN DUE ·COURSE. The question of

whether the purchaser of a note is one in due course is immaterial where the maker has no valid defense to a suit thereon.

**Appeal:** AMENDMENT OF RECORD.  When the record of a case has once been made. in the district court by the filing and certification of the shorthand notes and transcript, it is not subject to amendment by the reporter alone; this can only be done upon application, notice and order of court.

**Trial:** REOPENING CAUSE: DISCRETION.  The propriety of reopening a cause for further evidence after the parties have rested is largely a matter of discretion, and in the absence of its abuse the order of the trial court will not be disturbed.

**Same:** DIRECTION OF VERDICT: TIME OF RULING: DISCRETION.  It was within the discretion of the trial court to withhold a ruling on a motion to direct a verdict for plaintiff, upon reopening the cause for further evidence, until the close of all the evidence; and where upon the whole evidence the defendant was not entitled to judgment in any event, any informality in ruling upon the motion was not prejudicial.

*Appeal from Wapello District Court.*—Hon. F. M. Hunter, Judge.

Tuesday, October 22, 1912.

Action at law upon a promissory note.  The payee of the note was T. H. Corrick, who transferred the same in due form to the plaintiff.  The defendant set up the following defenses:  (1) That the note was void because issued in violation of the provisions of section 1641-b, Code Supplement; (2) that it was void for want of consideration and because the consideration had failed; (3) that it was obtained by false and fraudulent representation. It was also averred that the plaintiff was not a holder in due course.  At the close of the evidence the trial court directed a verdict for the plaintiff.  The defendant appeals. —*Affirmed.*

*J. P. Starr,* for appellant.

*J. J. Smith,* for appellee.

EVANS, J.—The note in question bears date March 8, 1908, and is for $500. It is known in this record as Exhibit A. Another note for a like amount was executed by the defendant to the same payee at the same time, which is known in the record as Exhibit 1. These notes were executed in purported payment for ten shares of corporate stock to be issued in the corporation known as the Underwriters' Agency Company. This company was a going concern, which had been originally capitalized at $15,000. The defendant had become a stockholder therein about a year prior to the transaction considered herein. Previous to March 28, 1908, the defendant had become the owner of two blocks of stock of five shares each issued upon the original capitalization. Shortly before March 28, 1908, it had been voted to increase the capitalization to $25,000, and thereby to issue and sell $10,000 additional stock. It was a part of this issue for which the defendant bargained at the time of the execution of the note in suit. The purpose of the corporation was to conduct a life insurance agency, and for that purpose it took over the business already existing of T. H. Corrick. Leading business men of tried sagacity looked upon it with favor, and became stockholders therein. Corrick was its secretary and treasurer and general manager. It paid enticing dividends at ten percent, and won the affections of its stockholders, and then died. We have only to do herein with the transactions relating to the notes of March 28, 1908, one of which is in suit herein, although the evidence in the record takes a somewhat wider range. We will direct our attention to the particular defenses set up in the order above stated.

I.   Section 1641-b of the Code Supplement is as follows:

Capital stock—how issued—executive council to fix value. That from and after the passage of this act no corpo-

ration organized under the laws of the state of Iowa, except building and loan associations as defined and provided for in chapter thirteen, title 9 of the Code shall issue any capital stock or any certificate or certificates of shares of capital stock, or any substitute therefor, until the corporation has received the par value thereof. If it is proposed to pay for said capital stock in property or in any other thing than money, the corporation proposing the same must, before issuing capital stock in any form, apply to the executive council of the state of Iowa for leave so to do. Such application shall state the amount of capital stock proposed to be issued for a consideration other than money, and set forth specifically the property or other thing to be received in payment for such stock. Thereupon, it shall be the duty of the executive council to make investigation, under such rules as it may prescribe, and to ascertain the real value of the property or other thing which the corporation is to receive for the stock; and shall enter its finding, fixing the value at which the corporation may receive the same in payment for the capital stock; and no corporation shall issue capital stock for the said property or thing in a greater amount than the value so fixed and determined by the executive council.

The transaction was had between Corrick and the defendant. The consideration for the note was an agreement to issue and deliver stock at par value in the corporation, and a certain further agreement on the part of Corrick personally which will be referred to later.

Was the note void as in violation of section 1641-b, *supra?* We think not. The clear purpose of such section of the statute is to protect the corporation as such against

1. CORPORATIONS: stock consideration other than money. the issue of its corporate stock in payment for property or services or other thing at fictitious valuations. "If it is proposed to pay for said capital stock in property or in any other thing than money," it is made the duty of the executive council to "ascertain the real value of the property or any other thing which the corporation is to receive for the stock." Granting that the spirit and letter of this statute might be

violated by issuing stock for promissory notes, no such case is presented here.    Nor in any event do we think the statute could be made available as a weapon in favor of the makers of notes, except for fraud or for want of consideration.    These grounds we consider later.    In the case before us, the maker was solvent, and the note was good. It was in itself a proposal and a promise to pay in money. There was no occasion for its valuation.    It was executed and delivered before the delivery or issue of the stock. The statute therefore had not been violated at the time of the delivery of the note.    The statute only forbids the issuance of the stock "until the corporation has received the par value thereof."    The statute does not forbid the execution of a promise to pay the par value of the stock in advance of the issuance thereof.    It can not be said therefore that the note was void as having been executed in violation of this statute.

II.    It is next argued that the note was without consideration, and that the consideration thereof wholly failed. As already stated, the substantial consideration for the note was the promise to issue stock.    There was a further consideration that Corrick executed and delivered to the defendant a written agreement.    This was not produced at the trial, but its substance was shown to the extent that he agreed to purchase such stock from the defendant at the expiration of one year and to pay him therefor par, and a premium of $50.    For some reason not appearing in the record, the certificates were never in fact issued.    Defendant was treated, however, as the owner thereof, and some dividends were paid to him thereon.    In September, 1908, the defendant elected to require Corrick to purchase such stock. Thereupon, in September, they entered into a written agreement known in the record as Exhibit C.    Such agreement, so far as it relates to the note in suit and its sister note, Exhibit 1, is as follows:

2. Same: failure of consideration: evidence.

Agreement between T. H. Corrick and P. L. Fulton as follows: Corrick agrees to sell one thousand dollars ($1,000.00) of stock in Iowa Underwriters' Agency Co., owned by Fulton within thirty days from this date at par and will take up and deliver to Fulton two notes of five hundred dollars ($500.00) each, dated March ——, 1908, payable to Corrick. Fulton to have dividends at 10 percent per annum on stock from July 1, 1908, to date of sale and to pay interest on the notes according to the terms thereof. . . . In the event that Corrick fails to sell said stock, he agrees to buy same and pay for same on above terms and conditions. (Signed) P. L. Fulton. T. H. Corrick.

Before this contract was entered into and on June 16, 1908, the present plaintiff had become the owner of the note in suit, claiming to have purchased the same in due course. In pursuance of the contract, Corrick surrendered to the defendant the $500 note (Exhibit 1), and paid him $500 in cash, which is the face of the note in suit. He also paid purported dividends on the stock at 10 percent. The note in suit bears interest at 7 percent. Defendant's testimony in reference to this transaction is set forth in his own abstract as follows:

After this agreement was made Corrick paid me $500 in cash, and took up and sent to me one of my notes for $500, and afterwards when the settlement in March, 1910, was made, he paid to me and my brother $1,000 in cash and gave us a note signed by himself and wife for $1,228. The note which my brother had given Mr. Corrick was for $500. To make the matter clear I gave him the first note about the last of April, 1907, the second note on January 27, 1908, and two notes on March 28, 1908. For the first two notes, I received two certificates of stock for $500 each, and at the time of the contract in September, 1908, he gave me his personal check for the dividends that was supposed to be standing on the books in my name which I had not received, and this was on the dividends due me on the entire $2,000 investment up to July 1, 1908. After that contract he sent me $500 in cash

and returned one of the second $500 notes. I still held two certificates of stock which I had received and continued to get dividends on that stock until the final settlement in March, 1909, except about $25 in dividends which I had not received, but which went into the final settlement. The $1,000 paid in the final settlement as shown by 'Exhibit 4' was also to cancel the indebtedness from Corrick to my brother, W. A. Fulton, on a note for $500 which he had given for stock that he had never received. When I and my attorney were here to see Corrick in September, 1908, about the stock certificates which I had not received, Corrick represented that the new stock certificates had not yet been issued, but that it was on the books all right, and I would get it in a few days. The question of dividends came up because I had not received the dividends on the stock which I held, and he said it had been overlooked by the bookkeeper, and he would give me his personal check, which he did, for some $48 or $50. He drew the check to himself and endorsed it.

This testimony is set forth a little more fully in the amended abstract of appellee. The foregoing, however, is sufficient to make it appear that the defendant received back from Corrick the full equivalent of the note in suit less the accrued interest at 7 percent for six months, or, as he estimates it, $25 in dividends. Upon this showing the agreement entered into by Corrick both at the time the note was given and also in September was breached to the extent of $18 to $28. Such a breach is not available to the defendant as a defense of total want of consideration. Whether the defendant could have interposed a counterclaim to this extent and substantiated the same as against the plaintiff we need not determine. The only defense pleaded at this point is the defense of total failure of consideration. His own testimony is fatal to such defense; and the court properly withdrew it.

III. The third defense above stated was not interposed until after the close of the evidence, and on the last day of the trial. The allegations of false representations

are as follows: The payee (nominally) T. H. Corrick rep-
resented to defendant that the Iowa Under-
writers' Agency Company was a prosperous

3. SAME: false
representations.

company, and able to pay a 10 percent dividend per year,
and would be able to pay 20 or 30 percent before the note
matured; that, if defendant would execute the two notes
for stock in the Iowa Underwriters' Agency Company, he,
Corrick, would personally guarantee a premium of $50 on
the stock at the end of the first year if defendant wanted
to sell it and a premium of $57 on the stock at the end of
eighteen months if defendant then wanted to sell, and that
he, Corrick, was financially worth $10,000, and amply able
to make said guaranty good; that the company would hold
said notes in their vaults and not negotiate them, and would
surrender them to defendant at their maturity if defend-
ant desired to surrender his stock at that time, because
the company did not need the money; and that W. B.
Bonnifield was a director in said company.

The defendant's testimony in support of these allega-
tions is as follows: "When I bought this last stock, Cor-
rick told me that he would keep those notes right in the
safe of the Iowa Underwriters' Agency Company. I be-
lieved his statements that he would do so, and that he
would return the notes and pay the premiums as he said
he would, and he told me that I would not want to sell him
the stock back because I would want to keep it as it would
pay at least 20 percent by that time. I did not have any
reason to think that he was not making me a truthful prop-
osition, and I believed what he told me at the time."
Some other representations are claimed to have been made
at a previous purchase of stock. It will be noted that the
representations above quoted from the defendant's testimony
relate to no existing fact. Standing alone, these are mere
promises or expressions of opinion for the future. Such
promises may sometimes form a part of known false repre-
sentations, but there is no attempt in this record to give

them any other character than appears upon their face. They do not of themselves amount to false representations in a legal sense. We must hold, therefore, that this defense was not sufficiently supported to require its submission to the jury.

Considerable argument is devoted to the question whether the plaintiff was a holder in due course. In view of our conclusions above indicated, the question becomes

4. Negotiable Instruments: holder in due course.

immaterial. It was a purchaser of the notes. The question of notice would become material only in the presence of a valid defense by the defendant as against this note. The evidence discloses that the real grievance of the defendant is in relation to other transactions.

These can not be litigated here, nor has any attempt been made by the pleadings to bring them into the litigation. We must therefore ignore them.

IV. Appellee has moved to dismiss the appeal for failure of appellant to serve notice of appeal upon guarantor defendants against whom judgment was entered. Considerable argument is devoted to this motion. It is sufficient to say that the same motion was submitted in advance of the submission of the case. It was then overruled and the ruling announced. We have seen no reason for a change of view and the former ruling will be adhered to.

V. Appellant has moved to strike a purported amendment to the transcript and an amended abstract by appellee. The appellee claims that through oversight the original transcript filed in the district court failed to incorporate a statement appearing in the original notes to the effect that at the close of all the evidence the plaintiff moved for a directed verdict. After the filing of appellant's abstract here, the shorthand reporter of the trial court filed with the clerk of such court an amendment to his transcript setting forth the additional record and certifying that it

was omitted by oversight from the original transcript. The amended transcript has been certified to this court, and an amended abstract incorporating the same has been filed by appellee.

It is sufficient to say that, when the record has been once made in the district court by the filing and certification of shorthand notes and transcript, it is not subject to change by the mere act of the shorthand

5. APPEAL:
amendment
of record.

reporter. The proper method of correction is very simple, and can not be ignored. Only the court has power to correct the record. For such purpose an application should be made to the court, and proper notice given. The trial court can then determine upon the evidence whether the record contains any mistake or oversight which is subject to correction, and can order or refuse correction accordingly. In the case before us no such proceeding was had. The appellant's motion to strike must therefore be sustained.

VI.   Some specific errors in relation to the admission of testimony are urged by the appellant: If these specifications were sustained, they would avail nothing to the defendant. The rulings were wholly without prejudice in view of our conclusions already announced, and we will not undertake to pass upon them as abstract propositions.

It is also urged by appellant that the trial court abused its discretion in reopening the case for additional evidence after the parties had once rested. This practice is not unusual. The record at this point discloses

6. TRIAL: re-
opening cause:
discretion.

no abuse of discretion. The propriety of such an order is pre-eminently within the discretion of the trial court. *Meadows v. Hawkeye Insurance Co.,* 67 Iowa, 57.

Lastly it is argued that the plaintiff did not move for a directed verdict at the close of all the evidence. This is the point in the record which was attempted to be covered by the amended transcript. Our ruling on appellant's

motion to strike leaves the record in the condition contended
for by appellant. From such record it ap-

7. SAME: direc-
tion of verdict:
time of ruling:
discretion.

pears that at the close of the evidence,
when the parties first rested, the plaintiff
presented a motion for a directed verdict. Before this
motion was ruled on, the case was reopened at plaintiff's
request for further evidence and further evidence was re-
ceived, and the parties again rested. Thereupon, according
to the record, the court sustained the plaintiff's motion for
a directed verdict. Whether this motion was written or
oral does not appear. Whether the ruling had reference to
the motion previously made or to the renewal thereof, made
after the final resting of the parties, does not appear. To
our minds it is quite immaterial.

That the trial court should withhold ruling upon the
motion to direct a verdict upon a reopening of the evidence
and should then rule thereon at the close of all the evi-
dence was a matter of mere form and order, and was clear-
ly within the discretion of the court.

Moreover in view of our finding that the defenses of
the defendant had all failed under the testimony, a judg-
ment against him was inevitable, and the formality of the
procedure at this point could not be prejudicial to him.

The judgment below must be—*Affirmed.*