INDUSTRIAL TRANSP. CO. v. RUSSELL. (No. 2451.) *

(Court of Civil Appeals of Texas. Texarkana. Feb. 8, 1922. Rehearing Denied March 16, 1922.)

1. Fraud ⟨⟩11(1)—Generally representations must relate to existing fact.

As a general rule, false representations, to be actionable, must relate to a fact susceptible of knowledge, existing at or before the time they were made.

2. Corporations ⟨⟩80(5)—Positive statement of value of stock representation of fact, and not mere opinion.

Statement of a corporation's agents to another, when inducing him to buy its stock, that it was then worth more than the price charged was a representation of fact, and not mere opinion, as regards right to rescission for fraud.

3. Corporations ⟨⟩80(12)—Finding that value was unknown not one of falsity of representation of value.

A finding that the value of the stock at time of purchase was "unknown" is not a finding of falsity of the representation of the corporation's agents to the buyer that it was then worth more than the price charged, warranting a judgment in favor of buyer demanding rescission.

4. Corporations ⟨⟩80(5)—Representations as to the future worth of stock expressions of opinion not to be relied on.

Representations that stock will in the future be worth a certain amount more than the price charged, and that it will pay certain dividends, and that if the buyer should become dissatisfied the corporation would return the money, are mere expressions of opinion, on which the buyer may not rely, and are not ground for rescission.

5. Corporations ⟨⟩80(12)—Relief to subscriber for fraud may not be based on guaranty.

If statements to subscriber for stock as to its future value and dividends be guaranties in a contractual sense, his action is on the contract, and not to rescind it for fraud.

On Appellee's Motion for Rehearing.

6. Appeal and error ⟨⟩930(3)—Finding warranted by evidence presumed made by court if with special findings of jury it would warrant the judgment.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, a finding warranted by the evidence on an issue not submitted, nor requested to be submitted, to the jury is presumed on appeal to have been found by the court, if in connection with those made by the jury on the issues specially submitted to them it would support the judgment.

7. Corporations ⟨⟩80(1)—Representation by agents as to refunding price of stock held not a promise constituting fraud.

Representation by the agents of a corporation in selling its stock that it would refund the price paid if the buyer became dissatisfied, though an opinion not entertained, not being a promise that the agents would do anything, is not within the rule that a promise which the promisor does not intend to perform, made to induce, and inducing the promisee to act as he otherwise would not to his injury, is fraud warranting a rescission.

8. Corporations ⟨⟩80(1)—Representation of worth of stock after a certain date not false, warranting rescission if value is such any time thereafter.

Representation by sales agent that after a future date stock would be worth 25 per cent. more than the sales price is not false, warranting rescission if at any time after such date it was worth such amount.

9. Corporations ⟨⟩80(1)—Representation of future dividend not as to a fact susceptible of knowledge.

Representation that stock would pay an annual dividend of at least 8 per cent. is not as to a fact susceptible of knowledge so as to constitute actionable fraud warranting a rescission.

Appeal from District Court, Hopkins County; George B. Hall, Judge.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted May 17, 1922.

Action by T. J. Russell against Industrial Transportation Company. Judgment for plaintiff and defendant appeals. Reversed and remanded for new trial.

July 5, 1920, appellee signed and delivered to L. M. Johns and W. H. Londergon, agents of appellant for the sale of its stock, an instrument in writing as follows:

"I hereby subscribe for 180 shares of the 8 per cent. cumulative preferred stock (par value $10 per share) and 20 shares of the common stock (par value $10 per share) of the Industrial Transportation, and agree to pay ten dollars ($10.00) per share for the preferred stock and ten dollars ($10.00) per share for the common stock, payable as follows:

"Cash accompanying this subscription $1,000 one thousand and no/100 dollars, and one note for one thousand dollars due November 15, 1920.

"I understand that stock certificate for this subscription shall be issued to me as fully paid and nonassessable upon full payment therefor. I hereby agree in case I desire to dispose of all or any part of my stock that I will give the company the first opportunity of purchasing same.

"No agreement other than what appears hereon is binding, and no agent or representative of the company or any other person has any power to change or alter the terms of this subscription. Preferred stock participates equally with the common in all dividends above 8 per cent. The common stock carries voting power of one vote for each share.

"Stock issued on basis of 9 shares of preferred to every one share of common."

This suit, commenced December 22, 1920, was by appellee against appellant to cancel said instrument and the note referred to, and to recover back the $1,000 mentioned therein, which he paid at the time he executed the instrument.

On issues made by the pleadings and testimony, the jury found substantially as follows: (1) That the transaction resulting in the execution by appellee of the stock subscription contract and note and payment by him of $1,000 was between him and L. M. Johns and W. H. Londergon, who were appellant's agents and acting within their authority as such "at the time they sold" the stock to appellee. (2) That said Johns and Londergon represented to appellee that they "had intimate knowledge of the value of the stock in controversy" and of appellant's business, and that "the existing condition of the business at that time was such that they could and did guarantee (a) that said stock would be worth on the market after August 1, 1920, 25 per cent. more than he was paying for same," and (b) that he "would receive annual dividends of at least 8 per cent. on the amount he invested in said stock." That the representations "in reference to the condition of said business" were not true. That Johns and Londergon knew they were not true at the time they made them. That

they made them "for the purpose of inducing the plaintiff (appellee) to purchase said stock," and that appellee "relied on said representations, and was induced thereby to purchase the stock. (3) That said Johns and Londergon further represented to appellee that the stock was then worth "more than appellee was paying for same," and that appellee relied on the representation, and was induced thereby to purchase the stock. (4) That said Johns and Londergon fraudulently "represented" and "guaranteed" to appellee, "in the event he should become dissatisfied with said stock, that said defendant company [appellant] would refund to him the sum paid on said stock, and would cancel and return the note he executed in payment therefor." That appellee "relied on said representations, and was induced thereby to purchase the stock." (5) That the value of such stock at the time appellee purchased and on August 1, 1920, was "unknown." That none of it was sold on the market after August 1, 1920. That its reasonable cash market value at the time of the trial was 55 cents on the dollar. (6) That appellee did not make "any inquiry as to the business of defendant company [appellant] before he signed the contract of purchase and note, of any other person, or make any investigation as to same outside of representations made to him by Johns and Londergon."

On the findings specified the trial court rendered judgment in favor of appellee for the $1,000 he paid for the stock, and canceling the note he gave for part of the purchase price thereof. Whereupon appellant prosecuted this appeal.

W. M. Pierson, of Dallas, for appellant.

Clark & Sweeton, of Greenville, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] Appellant insists that the representations made by its agents, as found by the jury, were not statements of fact, but of opinions merely, and therefore could not properly be made the basis of a judgment against it.

As the general rule is that false representations are not actionable unless they relate to a fact susceptible of knowledge which existed at the time the representations were made, or had existed before that time (12 R. C. L. 244), the contention must be sustained, if the representations should be construed to have been opinions, unless they were, and we think they were not, within some exception to the general rule.

Appellee insists that the statements were not mere opinion, and if they were that they nevertheless entitled him to the relief he obtained, because they were fraudulently made and were based on knowledge appellee had a right to believe appellant's agents possessed of facts he was ignorant of.

[2, 3] We are inclined to think appellee's insistence is tenable so far as it has reference to the representation as to the value of the stock at the time appellee purchased it, and, if the jury had found that the representation was false, that the judgment should not be regarded as unwarranted by the findings. Barber v. Keeling (Tex. Civ. App.) 204 S. W. 139; McDonald v. Lastinger (Tex. Civ. App.) 214 S. W. 829. But the jury did not so find. What they did find was that the value of the stock at that time was "unknown." It is obvious, therefore, that the representation in question did not warrant the judgment in appellee's favor.

[4] The other representations were: (1) That they [the agents] "had intimate knowledge of the value of the stock in controversy" and of appellant's business. (2) That "the existing condition of the business at that time was such they could and did guaranty (a) that the stock would be worth on the market after August 1, 1920, 25 per cent. more than he was paying for same," and (b) that appellee "would receive annual dividends of at least 8 per cent. on the amount" he vested in it. (3) That in the event appellee became dissatisfied with the stock, appellant "would refund to him the sum paid on said stock, and would cancel and return the note he executed in payment therefor." In the nature of things, no matter how intimately appellant's agents were acquainted with its business and the value of its stock at the time they made the representations, they could not, and appellee reasonably must have known they could not, know what the stock would be worth after August 1, 1920, nor the annual dividends which would be paid on it; nor could they know that in the event appellee became dissatisfied with his purchase appellant would cancel his note and return money he paid for the stock. Therefore the representations, except the one as to knowledge the agents had of appellant's business, which could not alone be made the basis of a judgment, were clearly expressions of opinion merely, on which appellee had no right to rely. 1 Black on Rescission and Cancellation, §§ 86, 89; Crosby v. Emerson, 142 Fed. 713, 74 C. C. A. 45; Bank v. Fulton, 156 Iowa, 734, 137 N. W. 1019; Weston v. Railway Co. v., 90 Ga. 289, 15 S. E. 773; Swan v. Mathre, 103 Iowa, 261, 72 N. W. 522. The law applicable is stated as follows in the cited section 86 in Black on Rescission and Cancellation:

"In order to effect a sale, induce the making of a contract, or place a proposed investment in a favorable light, it is quite common to make representations as to future value productiveness, efficiency, or economy or as to expected earnings or profits. But since that which lies in the future cannot be a matter of certain knowledge, it is held that all such representations must be taken and understood as mere expressions of opinion, and therefore their non-fulfillment cannot be treated as a fraud. Representations which are mere guesswork, it is said, are not a proper basis for a charge of fraud, and statements of forecast, opinion, or expectation, which are in substance mere matters of inference, cannot be considered false representations justifying the rescission of a contract.

"This rule is frequently applied in statements made to persons to induce them to subscribe for stock in a corporation or to purchase the shares of an existing company. All assertions in regard to the future earnings of the company or the successful conduct of its business, in regard to the dividends it will pay or the profits to be derived from it, or in regard to an expected or predicted increase in the market value of the stock, are merely matters of opinion, on which the subscriber or purchaser has no right to rely, and though they are not verified by the course of events, or prove to have been false when made, or even to have been made with no expectation of their ever being realized, still they furnish no ground for rescinding the contract."

Appellee cites quite a number of cases as supporting his contention to the contrary of the conclusion we have reached. As we understand those cases, they are all so unlike this one in their facts as to render them of no value as authority in determining the question made by facts of this case.

[5] It follows from what has been said that we think the judgment was unwarranted, unless it should be held that it was supported by the finding that appellant's agents "guaranteed" that the stock would be worth on the market after August 1, 1920, 25 per cent. more than he was paying for it, that he would receive annual dividends on it of not less than 8 per cent. on the sum he invested in it, and that if he should become dissatisfied with his purchase appellant would cancel his note and pay back the part of the purchase price he paid in money. If the finding meant that the statements of appellant's agents were not mere "representations," but were "guaranties" in a contractual sense, it is plain it did not warrant the judgment; for appellee's suit was to annul and not to enforce the contract he entered into.

As we view the record, the judgment was not warranted by the findings, and should be reversed, and judgment should be rendered here that appellee take nothing by his suit. It will be so ordered.

### On Appellee's Motion for Rehearing.

After further consideration of the record in connection with the motion for a rehearing and the authorities cited in it, we are still of the opinion that appellee was not entitled to the judgment he obtained.

There is no doubt the representation by the agents that the stock was worth at the time they were urging appellee to buy it

more than they were offering to sell it to him for was a representation as to a then existing fact, and that appellee would have been entitled to the relief he obtained if he had shown the statement to be false. But, as stated in the opinion disposing of the appeal, he did not show that. The finding of the jury was that the value of the stock was then "unknown." The burden was on appellee to prove the representation to be false; and, as he did not make such proof, the inference is that he could not, and that the representation was true. If it was, then appellee got property worth at the time he purchased it all or more than he paid for it.

If, therefore, fraud of which he had a right to complain was practiced on appellee, it lay in the fact that he was induced to buy property worth what he paid for it by the "guaranty" of the salesmen that it would be worth 25 per cent. more on the market after August 1, 1920, and would pay an annual dividend of at least 8 per cent., or by their "guaranty" that if he became dissatisfied with the stock appellant would refund the sum and cancel the note he gave for it.

If what the salesmen said about the future value of the stock, the dividend it would pay, and appellant's canceling the sale should be treated as guaranties in a contractual sense, and not as representations of opinions entertained by the salesmen, as we are inclined to think they should be (McCoy v. Trust Co. [Tex. Civ. App.] 200 S. W. 1138; Moore v. Cross, 87 Tex. 557, 29 S. W. 1051; Ins. Co. v. Barrington [Tex. Civ. App.] 180 S. W. 936; 1 Elliott on Contracts, § 84), then appellee's cause of action was on the contract, and not one to rescind it for fraud. In that view the judgment would clearly be unwarranted.

[6, 7] Treating them as representations of opinions entertained by the salesmen, however, it is plain that the one that appellant would refund the money and cancel the note appellee gave for the stock if he became dissatisfied with it could not be made the basis of a judgment in his favor on the findings of the jury alone; for they did not find that the opinion was not in fact entertained by the salesmen at the time they expressed it, nor that they did not honestly believe appellant would return the money and cancel the note in the event stated. But if the testimony warranted findings that the agents knew the representation was false, and that they made it to deceive appellee, and if such findings in connection with those made by the jury would support the judgment, this court, in view of article 1985, Vernon's Statutes, should assume that the trial court made such findings, for those matters were not submitted, nor requested to be submitted, to the jury. We have read the testimony in the record, and have concluded, not without some doubt as to the correctness of the conclusion, that it ought not to be said it did not warrant a finding that the agents had no reason to believe appellant would agree with appellee to rescind the contract if he became dissatisfied. The representation, therefore, should be viewed as the expression, for a fraudulent purpose, of an opinion not entertained. So treating it, we do not think it was within the rule invoked by appellee, to wit, that a promise which the promisor does not intend to perform, made to induce, and which does induce, the promisee to act as he otherwise would not to his injury, is fraud which will warrant a rescission. The promise of the agents was not that they would do anything, but that appellant would agree to rescind in the event stated.

[8] As to the statement made by the salesmen that the stock would be worth 25 per cent. more after August 1, 1920, than it was worth when they offered to sell it to appellee, it should be noted that it did not specify how long after that date it would be before it would have the increased value, nor how long it would maintain such value when it reached it. The jury did not find it was not worth such increased value after the date mentioned. What they did find was that its value on August 1, 1920, was "unknown," and that its value at the time of the trial (to wit, March 5, 1921) was 55 cents on the dollar. They made no findings as to its value after August 1, 1920, and before February 9, 1921, when the petition on which the trial was had was filed. If the stock, on any day after the one specified, was worth on the market what the salesmen represented it would be worth, the representation was not false, and it could not be made the basis of the judgment. The finding of the jury that its value on August 1, 1920, was unknown, it seems to us, is strongly suggestive of the fact, as we think, that the testimony did not show what it was worth on August 2, 1920, and about that time. We think, therefore, that it cannot be presumed in support of the judgment that the court found the stock was not worth after August 1 what the salesmen said it would be.

[9] So it appears, as we see it, that if the judgment was warranted it must have been because of the representation of the salesmen that the stock would pay an annual dividend of at least 8 per cent. We thought (as stated in the opinion disposing of the appeal) that that statement was too palpably speculative, whatever knowledge of appellant's business was attributed to the salesmen, to deceive any ordinary man, and therefore that it ought to be said as a matter of law that appellee had no right to rely on it in purchasing the stock.

Appellee insists that the view we took of the question was wrong, and that he had a right, the salesmen having assured him (as

found by the jury) that they had intimate knowledge of the value of the stock and the condition of appellant's business, to rely on the fulfillment of the prophecy, and particularly so in view of the further findings of the jury that the prophecy was known by the salesmen to be false, and was made to deceive him.

In holding as we did this court did not lose sight of the exception to the general rule that "in order to constitute actionable fraud a false representation must relate to a matter of fact, and such fact must be one which exists in the present or which existed in the past," and must relate "to a fact which is susceptible of knowledge" (12 R. C. L. 244), which exists when it appears that an opinion expressed was intended to deceive and was coupled with representations of fact relating to a matter susceptible of exact knowledge. We thought, as stated in the opinion the value of the stock in the future and the dividend it would pay were not matters "susceptible of exact knowledge" by any one, and that appellee should be assumed to have known they were not.

We have not been cited to and have not found a case where it has ever been held that a purchaser was entitled to predicate fraud on a prophecy like the one in question, in the absence, as was the case here, of relations of trust and confidence between the seller and buyer which justified the buyer in accepting as true everything said by the seller, however speculative it might appear to be.

The cases which appellee seems most confidently to rely upon as supporting his contention are Investment Co. v. Clark (Tex. Civ. App.) 216 S. W. 220, and Edward Thompson Co. v. Sawyers (Tex.) 234 S. W. 873. The first mentioned of the two cases seems to have been an action for damages for fraud practiced on the plaintiff. The court held it was not error to admit as testimony representations like some of those in question here, but did not hold that such representations were sufficient as a predicate for the judgment they were reviewing; for it appeared that there were other representations, and that same were as to matters of fact, and it further appeared that the trial court had expressly instructed the jury that they could not base a finding in favor of the plaintiff on representations of the defendant that the stock would pay 10 per cent. dividends. In the other one of the two cases it appeared that the plaintiff had been induced to enter into a written contract to purchase a set of law books by a promise of the defendant, which at the time it made same it did not intend to, and knew it could not, perform, that it would publish and send him annual supplements to the work. The question before the court was one as to the admissibility of parol evidence to prove the promise; it being objected to on the ground that it varied the written contract. The Supreme Court held the testimony was admissible, and in the course of its opinion said:

"Promises made without intention of fulfillment, in order to induce others to make contracts, are as culpable and as harmful as are willful misrepresentations of existing facts. Hence contracts may be avoided alike for such fraudulent promises and for such misrepresentations."

The language of the court quoted is nothing more than a restatement of a long-established rule in this state, and we think has no application to this case on its facts as found by the jury. The only promise relied on here is that of the salesmen that appellant would refund money and cancel the note appellee gave if he became dissatisfied with the stock.

The motion for a rehearing will be overruled, but the judgment of this court so far as it was rendered in appellant's favor will be set aside, and the cause will be remanded to the court below for a new trial.

The assignments in appellant's brief present other questions than those discussed in this opinion and the one heretofore filed. It is not likely any of those questions will arise on another trial of the case. Therefore all we will say here about them is that on the case made by the record now before us the judgment would not be reversed if we thought it was authorized by the findings made by the jury and those the trial court was authorized to make.