**TEXAS INDUSTRIAL INVESTMENT CORPORATION, Appellant,**

v.

**Harriet A. TABER, Appellee.**

No. 13262.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 8, 1958.

Rehearing Denied Feb. 5, 1958.

Wm. Andress, Jr., Dallas, for appellant.

Johnson, Hester & Jenkins, Harlingen, for appellee.

BARROW, Justice.

This suit was brought by appellee, Harriet A. Taber, against appellant, Texas Industrial Investment Corporation, seeking a rescission of her purchase of certain corporation stock, on the alleged ground of fraudulent representations inducing her to make the purchase.

The appellant timely filed its plea of privilege to be sued in Dallas County, the county of its residence, which was controverted by appellee, alleging that appellant's agent, Nettie Larson, acting for and on its behalf in Cameron County, made certain false and fraudulent representations to appellee and thereby induced her to purchase the stock. Appellee relies on Subdivision 7, Article 1995, Vernon's Ann.Civ.Stats., to sustain venue in Cameron County, the county in which the representations were made.

The trial court overruled the plea of privilege, and this appeal is from that judgment. Appellant presents six points. All of such points raise the question of whether there is evidence to support the judgment.

The evidence shows without contradiction that appellant's agent, Nettie Larson, made four separate sales of stock aggregating the sum of $5,001, to Harriet A. Taber, a widow, seventy-six years of age and un-

familiar with such transactions, on the following dates: May 11, 1954, May 22, 1954, December 31, 1954, and September 2, 1955. It is not disputed that during the various negotiations said agent represented to appellee that the shares were going up, that they were going to advance in price, that they were worth the money they were asking for them, and that they were worth everything they were asking for them. Said agent further told appellee that the shares originally sold for 25¢ per share, then had gone up to 50¢ and then to $1.00. Appellee made two purchases at $1.00 per share, later, one purchase at $1.25, and still later, one purchase at $1.50 per share. Said agent told appellee that the Company was growing by leaps and bounds, that money was just pouring in from all parts of Texas, and that she (the agent) would come home from Dallas all enthusiastic. The agent further represented to appellee that if she needed money she could take "the money back on the stock." The record contains a prospectus and numerous letters, notices and announcements, which pictured the proposals and prospects of the Company in most glowing terms, all of which added force to the statements of its agent. The record further shows that at the time appellee made the last purchase, on September 2, 1955, at $1.50 per share, she was told that the shares were advancing to $2.00, but that instead the Company closed down and did not again open for business. Appellant offered no evidence, nor is there any explanation why this concern which was growing by "leaps and bounds" should suddenly close down, at the very time its stock was to advance another 50¢ per share and be worth the money, neither is there any showing as to what became of its assets, if any. Appellee testified that she relied upon the representations made to her and would not have purchased the stock had she not so relied.

We do not deem it necessary to unduly lengthen this opinion by further quotation from the record, but having examined the same we have reached the conclusion that the judgment of the trial court is supported by the evidence.

In order to sustain venue under Subdivision 7 of Art. 1995, it is necessary to prove by a preponderance of the evidence the following: (1) The false representation made by the defendant; (2) reliance thereon by plaintiff; (3) action in reliance thereon by plaintiff; and (4) damage to plaintiff resulting therefrom.

It is also an established rule of law that the overruling of a plea of privilege by the trial court will be sustained when, by fair inferences properly deducible from the testimony at the hearing, it appears that fraud was practiced by the defendant on plaintiff in the county of venue.

In 20 Tex.Jur., Fraud and Deceit, Sec. 64, p. 99, it is stated:

"Fraud of an authorized agent will invalidate a contract procured thereby, and may render the principal liable also in damages, although the principal had no knowledge of the fraud and did not consent to it. But this rule applies only when the agent was acting within the scope of his authority or when the principal has otherwise rendered himself liable. In such case, in determining the liability of the principal for the damages actually suffered, it is immaterial whether the principal, if he made such representations, or his agent, if he made them, was aware of the falsity, or made the representations innocently, believing them to be true. * * *"

In Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034, 1037, 51 A.L.R. 1, affirming Tex.Civ.App., 238 S.W. 1030, it is stated:

"While it is true that such agents sometimes depart from their instructions and exceed their authority in making representations, yet when they are acting within the apparent scope of their employment, when they do depart

from their instructions and when they do falsify the facts, it is proper that their employer, who has put them before the world as his agent for the transaction of his business, should suffer from their dereliction, rather than the public who are preyed on."

We quote from 20 Tex.Jur., pp. 159 and 160, as follows:

"In another case it was said that

" 'It (fraud) is not, in its nature, discernible by the direct evidence of the senses, and is usually so covert and concealed, or is attended with such attempts at concealment, as to be incapable of proof otherwise than by circumstantial or presumptive evidence. Its existence, in a given case, may be proved, either by intrinsic evidence of unfairness in the transaction itself or by evidence of facts and circumstances attending it, which, by the ordinary tests by which we judge of the motives to action, appear inconsistent with an honest purpose.' * * *

"Conversely a person charged with fraudulent dealing may prove the attending facts in order to show that the entire transaction was open and free from misrepresentation or other invalidating influence."

Appellant seeks to escape responsibility for the representations of its agent, Nettie Larson, by having the following clause inserted in the prospectus:

"No dealer, salesman or other person has been authorized to give any information or to make any representations other than those contained in this prospectus, in connection with the offering contained herein, and information or representation not herein contained, if given or made, must not be relied upon as having been authorized.

This prospectus does not constitute an offering or solicitation in respect to these securities or to any person who is not a bona fide resident of the State of Texas."

■ Justice Calvert, speaking for our Supreme Court, in the recent case of Dallas Farm Machinery Co. v. Reaves, 307 S.W.2d 233, where the merger clause appeared in the contract, has set at rest the uncertainty and conflicts heretofore found in the authorities, and holds that where a contract is procured or induced by the fraudulent representations of the agent, the merger clause restricting his authority to make such representations falls with the contract.

■ Appellant contends that all the statements made by its agent were what is known as sales talk, or "puffing," and are therefore not actionable. We overrule this contention. Our Supreme Court in Russell v. Industrial Transp. Co., supra, held that if representations in the sale of stock in the form of promises for future returns were merely opinions or promises, were known to be false by the agent making them, when they were made and were made to deceive the purchaser and induce him to make a contract, and were relied on by him, they were actionable. Edward Thompson Co. v. Sawyers, 111 Tex. 374, 378, 234 S.W. 873, 874.

■ Appellant also contends that since appellee still has the stock and has not tried to dispose of it on the open stock market she has not been damaged. Her testimony is undisputed that she tried to sell the stock back to appellant and also tried to get appellant's agent, Nettie Larson, to sell it, which efforts were fruitless.

Having reached the conclusion that the judgment is supported by sufficient evidence, it is affirmed.