## RAWSON v. HARGER.

1. **Patent:** VALIDITY : VENDOR AND VENDEE. In the sale of a patent the patentee is not bound in the absence of fraud by any representation respecting the validity of the patent, nor has the vendee any right to rely upon such representation.

2. —————: NOVELTY. Nor can the vendee rely upon the representation of the patentee that his invention is novel, and that he is the original discoverer of the principle involved therein.

3. —————: JURISDICTION. Whether or not the State courts have jurisdiction to determine whether a machine which has been patented is novel, *quære*.

4. —————: CONTRACT : EQUITABLE JURISDICTION. If fact of the novelty of the invention is equally unknown to both the parties to a contract for the sale thereof, or if each has equal means of information, equity will not interfere to relieve either from the obligations of his contract, where the parties thereto have acted in good faith.

*Appeal from Polk District Court.*

FRIDAY, APRIL 19.

IN 1869 the defendant claimed to be the owner of a patent right for an alleged improvement in steam furnaces for fanning the fire, commonly called a blower. At that time, and subsequently, in consideration of the conveyance by the plaintiff of certain real estate, and promissory notes given him, the defendant sold and assigned said patent for certain specified territory to the plaintiff. The latter claims he made said purchase through and by reason of certain false and fraudulent representations of the defendant; and that the defendant was not the original discoverer thereof; and that the patent was null and void. He also claims defendant surrendered said patent without the knowledge of the plaintiff, and procured a reissue thereof, which is less than, and dissimilar to, the original. This action is an equitable action, and seeks to obtain a rescission of the contracts and a re-conveyance of the real estate. There was a reference, and the referee found for the plaintiff, which was set aside by the District Court, and a decree entered dismissing the petition. The plaintiff appeals. The cause is triable *de novo* in this court.

*C. C. Cole* and *Jas. Embree,* for appellant.

*Clark & Connor,* for appellee.

SEEVERS, J.—To use the language of counsel for the appellant, "A rescission, recovery and reconveyance is grounded upon the alleged false and fraudulent representations by the defendant respecting the said patent, to-wit: that the patent was a valid one; that the defendant was the inventor thereof; that it was entirely new and of great utility; whereas the patent was not legal or valid, nor was the defendant the original inventor, nor was it entirely new, or of any utility or value; that said representations were relied upon by the

plaintiff, but were false, to the knowledge of defendant. It is further claimed as a ground of recovery that, after the sale of the patent to the plaintiff, the defendant surrendered that patent, and obtained a re-issue which is less than and dissimilar to the original, and entirely worthless, and wanting in novelty." It is also stated by such counsel: "The plaintiff's right to recover is not based on warranty, but on false representations; for mistake; for fraud."

So far as deemed necessary, the several grounds upon which the relief asked is based will be now considered.

I. As to fraud and misrepresentations. A careful consideration of the evidence, in connection with the exhaustive argument of counsel, fails to satisfy us that any such were made. On the contrary, we are strongly impressed with the belief the defendant fully believed all he told the plaintiff. The most that can be claimed in this respect is that he was mistaken in the representations made, but that he honestly believed them to be true.

II. As to the validity of the patent. Without doubt the defendant represented he had a patent regularly and properly issued by the United States government. The only representation of fact, however, was that he had a patent. This was true; whether it was valid or not, in the absence of fraud, was a question of law, and he was not bound by such statement, nor had the plaintiff a right to rely thereon.

1. PATENT: validity: vendor and vendee.

III. As to the utility. All the witnesses who speak on this subject agree the machine is useful, the plaintiff himself being among the number. Such being the case, it cannot with propriety be said there was an entire failure of consideration.

IV. As to novelty and that the defendant was the original discoverer. In one respect it can be well said the defendant was the inventor. He had procured a patent valid on its face. *Prima facie* he was the owner of something of value. He might well so represent unless he knew

2. ——; novelty.

otherwise. But we are unable to find he represented it to be new, or that he was the first discoverer of the principle patented. It may be admitted the plaintiff so testifies, but this is denied by the defendant. The burden is on the plaintiff. There is nothing which will warrant us in finding either of these persons have made any false statements. They understood the transaction differently; at least this is the charitable view, and we believe the correct one. Neither of them is materially supported by the testimony of other witnesses.

There is also another view that may be taken. Whether he was the inventor of a new or novel machine the defendant could not possibly know, unless he had been so informed, and had reason to believe the information to be true. At the time of some of the transactions between these parties, the plaintiff had fully as much knowledge, as appears from the evidence, as the defendant. There were rumors that the machine was not new, and that defendant was not the original discoverer. The existence of such rumors came to the plaintiff's knowledge before he made at least some of the purchases.

But, conceding the defendant represented as claimed, we regard it as doubtful whether the plaintiff could properly rely thereon. In the nature of things the plaintiff should have known the defendant had no such knowledge.

Such a representation may be well likened to one where a party represents there is some kind of mineral underlying the surface of land. This, at best, is a mere opinion, and no one should be allowed to rely thereon and have a contract set aside based on such a representation. In such case, and in the one at bar, both parties have equal knowledge, and contract accordingly.

V. It is claimed the evidence clearly shows the machine patented was neither new nor novel, and that in entering into the contract both parties undoubtedly supposed it to be so. Therefore, this constituted a mistake of fact, and entitles the plaintiff to the relief claimed. If this be conceded, it is insisted, on the other hand, that State courts.

3. ——: jurisdiction.

have no jurisdiction to determine the question; because, to do so, the validity of the patent is solely involved, and as to such question the United States courts have exclusive jurisdiction. This question has never been decided by this court. The only cases bearing thereon cited by counsel are *Hunt v. Hoover*, 24 Iowa, 231; *Hall et al. v. Orvis et al.*, 35 Id., 366; and *Percival v. Harger*, 40 Id., 286. We do not now feel called upon to determine this question, and therefore shall not stop to point out the difference between this case and those determined by other courts upholding the jurisdiction of the State courts.

VI. It is the established rule, if the subject-matter of the contract in this case, the novelty of the invention, was "equally unknown to both parties, or where each had equal knowledge and adequate means of information, or where the fact is doubtful from its own nature, in every such case, if the parties have acted with entire good faith, a court of equity will not interpose." 1 Story's Equity, § 150; *McCobb v. Richardson*, 24 Me., 82.

We are impressed with the belief both parties acted in good faith and believed the machine to be valuable, and that neither knew it was wanting in novelty at the time any of the contracts were made. Both of them knew there were doubts in relation thereto, but one knew, or could by the exercise of reasonable diligence have known, as much as the other. The fact of novelty was doubtful. Neither of them could know how this was until the question had been adjudicated. Both may have had opinions on this subject; but, whatever such opinion may have been, its truth could not have been tested with an approach to accuracy. It seems to us the facts in this case bring it fully within the foregoing rule.

But conceding there is a want of novelty in the invention, is the plaintiff entitled to the relief asked? Even if this were an executory contract, we understand the well settled doctrine to be that when a party has the right to rescind, on the ground of fraud or mistake, such right must be exercised

at the time discovery is made, or within a reasonable time thereafter. *Holdbrook v. Burt*, 22 Pick., 546; *Gatting v. Newell*, 9 Ind., 572; *Lawrence v. Dale*, 3 Johns. Ch., 23; *Hoffman v. Noble*, 6 Met., 68. No rule can be laid down applicable to all cases. What is a reasonable time depends upon the property, parties, and circumstances existing at the time the attempt to rescind is made.

In *Kingsley v. Walles*, 14 Me., 57, it was held the lapse of less than three months deprived the party of the right to rescind. This case was in relation to a patent right, and the right to rescind was reserved in the contract.

The plaintiff made his first purchase on the 19th day of July, 1869; his second on the succeeding day; his third on the 11th day of October following, and his fourth and last, as we understand, on the 6th day of March, 1872. At each of these purchases a portion of the real estate in controversy was conveyed to the defendant, and the patent, for certain described territory, duly transferred to the plaintiff. So far as the real estate is concerned, the contracts were wholly executed.

This action was commenced in April, 1874. An answer was filed, and the cause thus stood, without anything further being done, until April, 1876, when an amended petition was filed, and a hearing had as soon thereafter as could be.

A short time before the action was brought, the plaintiff, for the first time, offered to rescind and re-assign the patent, and demanded a reconveyance of the real estate.

As early as October, 1869, the plaintiff learned that some, if not many, persons asserted the invention was wanting in novelty.

The case of *Percival v. Harger*, before cited, in which the validity of this same patent was involved, was then pending. The plaintiff had knowledge of this suit, and talked with one of the plaintiffs therein in relation to the matters involved, and thereafter made two of his purchases.

In 1870 he gave a party a power of attorney, and authorized him to sell the patent within certain territory. From

this person he learned sales could not be made, because the novelty of the patent was doubted, and yet, nearly two years afterward, he made another purchase.

The value of a patent is purely speculative. It may be worth much or little. He who buys takes his chances, and if, legally or equitably, he can repudiate the contract, he should do so at least within a reasonable time after he has knowledge of the existence of the cause, or, if he has sufficient knowledge to put him on inquiry, we think he should prosecute the same with reasonable diligence, or be barred of his right. Where the property is of such a character a shorter delay will bar equitable relief than in other cases. Kerr on Fraud and Mistake, 306.

The plaintiff, for several years, made efforts to sell the patent, and used and controlled it as his own, and made no move toward rescinding until nearly five years after his first purchase, and two years after his last.

It cannot be in accord with any equitable principle for the plaintiff, for so long a period of time, to take the chances of large gains, and, failing in this, ask and obtain a rescission of the contract, the subject-matter of which is acknowledged to be of value. Instead of being swift, he has been exceedingly slow. In the meantime, he was weighing the chances of success. Under the circumstances, he must abide the consequences of this speculation.

VII. As to the surrender and reissue, we are unable to say the plaintiff lost anything thereby. On the contrary, it seems to us that whatever there was of value in the old was retained, with a claimed improvement, in the reissued patent. Before the patent had been reissued, the plaintiff had knowledge of the application therefor, and in October, 1869, accepted the benefits and advantages thereof in case one should issue. And a few days after the reissue was made, and in October, 1869, the defendant, at his request, assigned and transferred to the plaintiff such new patent for the territory purchased.

Under these circumstances, plaintiff has not, at this late day, any just ground of complaint by reason of the reissued patent.

We have carefully read the evidence as to the Orwig transaction, and are of opinion the plaintiff has no just ground of complaint here. A reference to the evidence and a statement of our reasons would be of no advantage, and, besides, this opinion is already sufficiently lengthy.

AFFIRMED.