Sweney v. Davidson et al.

AFFIRMED.

### SWENEY v. DAVIDSON ET AL.

1. **Contract:** PAYMENT: EVIDENCE CONSIDERED. The evidence in this
case considered, and *held* insufficient to establish defendants' claim that
certain payments were made on the contract in question.

2. ———: TO BUILD HOUSE: DAMAGES FOR DELAY.    Where a house was
not finished until fourteen days after the stipulated time, but extra work
was ordered, it cannot be said, without evidence, that the delay was
longer than required to do the extra work.

3. ———: TO CONVEY LOTS AND ERECT HOUSE: MISREPRESENTATION AS

TO COST OF HOUSE. Where plaintiff agreed to erect a house of a certain description on certain lots, and convey the house and lots to defendants for a certain named sum, plaintiff's statement at the time that the house would cost $1,400, when in fact it cost only· $1,287.50, *held* to be only an expression of his opinion as to the cost of the house, and not a misrepresentation rendering him liable for the difference.

4. **Arbitration and Award:** PLAINTIFF NOT BOUND BY. Defendants relied on an arbitration and award, but, as the agreement to arbitrate did not purport to bind plaintiff, and there is no sufficient evidence that it was authorized by him, *held* that he was not bound by the award.

5. **Practice:** RECOVERY OF ATTORNEY'S FEES ON CONTRACT: TIME OF FILING AFFIDAVIT: PRACTICE ON TRIAL DE NOVO. Since the affidavit for an attorney's fee, required by § 3, chap. 185, Laws of 1880, does not appear to have been filed with the original papers, within the meaning of the statute, as construed in *Wilkins v. Troutner*, 66 Iowa, 557, the fee was improperly allowed; and it must be disallowed on a trial *de novo* in this court, even though the precise question was not brought to the attention of the court below.

*Appeal from Des Moines Circuit Court.*

FRIDAY, MARCH 19.

ACTION in equity to foreclose two contracts whereby the plaintiff sold to the defendant Sarah J. Davidson two pieces of real estate, in the city of Burlington. There was a decree for the plaintiff, and the defendants appeal as to the ruling upon one of the contracts.

*Poor & Baldwin*, for appellants.

*J. C. Power* and *S. L. Glasgow*, for appellee.

ADAMS, CH. J.—I. There are several grounds of controversy between these parties, but the principal one pertains to the question as to what payments have been made to the plaintiff. The defendants, Sarah J. Davidson and her husband, claim that they have paid the larger contract in full. The contract called for $2,775. They aver that they made a payment of $1,200 on the fourth day of January, 1884, and a payment of $1,200

1. CONTRACT: payment: evidence considered.

on the twenty-fourth day of January, 1884, and another payment of $375 on the same day. The plaintiff admits a payment of $1,200 on the twenty-fourth day of January, 1884, but denies that any other payment was made on that day, and denies that any payment at all was made on the fourth day of January, 1884, and claims, indeed, that the contract had not been entered into at that time. The defendants both testify to the three payments alleged to have been made by them; and, in respect to the payment of $1,200 alleged to have been made on the fourth day of January, they are corrobated by one Mary Barnett, a sister of Mrs. Davidson. The plaintiff, in his testimony, positively denies all payments except that of $1,200 on the twenty-fourth day of January, and about which there is no controversy. If the determination of the question depended upon the testimony of these four witnesses alone, we might feel constrained to say that the preponderance would appear to be with the defendants.

The contract in question was designed to be executed in duplicate. Two copies were made, and both acknowledge the receipt of $1,200 as paid in hand; but for some reason the copies, as they are shown to us, differ in date. The one held by defendants is dated January 4, 1884, and the one held by plaintiff is dated January 24, 1884. Both copies, of course, cannot be correct. If the defendants' copy is the true one, it would appear very clearly that the $1,200 acknowledged therein to have been paid was paid on the fourth day of January, 1884; and, as it is conceded that there was a payment of $1,200 on the twenty-fourth day of January, it would appear that there must have been two payments of $1,200 each, as the defendants claim. A considerable amount of evidence was introduced for the purpose of showing which was the true copy. We cannot set it all out in detail, but will refer to most of it in a general way. The defendants testify that the duplicate copies were signed in their butcher shop on the fourth day of January, and the plaintiff testifies that they were signed in the Merchants' National Bank of

Burlington on the twenty-fourth. After a careful examination of all the facts and circumstances shown, we have to say that we think that the plaintiff's statement is correct.

The contract provided, not only for a sale and conveyance of certain lots by the plaintiff, but also for the erection thereon of a dwelling-house. The money called for by the contract, to-wit, $2,775, was agreed upon as the price of both lots and house. Now, the evidence, we think, shows pretty clearly that the plan of the house was not sufficiently settled as early as January 4th to fix the price. It is possible, of course, that the defendants might agree to pay a fixed sum for a house and lots without knowing what the house was to be, but it seems improbable that they did. The defendants undertake to account for the money with which they say that a payment of $1,200 was made January 4th. They say that Mrs. Davidson had at that time $1,700, which she brought with her to Burlington about two years before from Illinois, where she and her husband had been living on a farm owned by her. This money, they say, was never deposited in bank, nor loaned, nor used in any way, but was kept in their house, where they had no safe; and that, too, notwithstanding the husband was absent a part of the time as a brakeman upon a railroad, and Mrs. Davidson was left alone in the house, there being no other members of the family. While the facts might be as testified to by them, no one, we think, can read their statements without some suspicion of their truthfulness.

Again, it is admitted by the defendants that they took no receipt for any money paid on the twenty-fourth of January. They disclaim, of course, the receipt contained in the contract as applicable to that payment. According to their theory, they paid up the contract in full on the twenty-fourth of January, and took no receipt, nor did they obtain a deed. The only explanation offered by their counsel is that they were not much acquainted with business. But they had managed to accumulate considerable property, and, if their own testimony

is to be believed, they were persons of thrift. We can hardly take notice that persons of that class make large payments, and preserve no evidence of the same, more frequently than persons having a large number of transactions. That the defendants should have had some evidence of their payments, if made, as they claimed, is a fact so obvious that we cannot think that it could have escaped their attention. But we have the direct testimony of a disinterested witness as to the day on which the contract in question was signed. It is conceded that on the twenty-fourth day of January the parties met in a private room of the president of the Merchants' National Bank, and that they there signed a contract. The defendants say that the contract signed was the other one of the contracts involved in this case, pertaining to different property, and about which there is no controversy. The plaintiff says that the contract there signed was the one in question. But it is undisputed that the other contract, about which there is no controversy, was wholly in writing. The one in question is in print and writing, and mostly in print. Mr. Barhydt, the president of the bank, was present, and saw the contract which was signed, and saw the signing done, and he testified that the contract was partly in print. On this point he testifies very positively. We see no reason to doubt the truthfulness of this witness. He was not only disinterested, but we are unable to see that he testified under any bias. He says, to be sure, that the plaintiff is a director in the bank, from which, perhaps, we should infer that he is a personal friend; but it would be going too far to attach any importance to such circumstance. He testified, further, that the contract there signed was left with the bank; and, as we understand, it is undisputed that the contract left with the bank is the one in question.

The testimony shows that the contract in question, as evidenced by the duplicate copies, was partly reduced to writing some days previous, and perhaps as early as the 4th. It seems probable that the date first inserted was the fourth, or that a

blank was left, and that, at the time the copies were completed and signed, the matter of the date in both copies was not attended to. But how the discrepancy occurred, which it is certain exists, it is not very important to determine. We place great confidence in the testimony of Mr. Barhydt, and believe that the true date is January 24th. There are some circumstances, it is true, which tend to corroborate the defendants. The contract makes the deferred payment due January 24, 1884, which is the day of date; but the plaintiff testifies that there is a mistake in the year, the intention being to make that payment due January 24, 1885. Such a mistake it would not be difficult to make, and it seems probable to us, in view of the whole case, that such mistake was made. There was some evidence tending to show that the copy left with the bank was carefully inspected with reference to its date, and that the date which it bore at that time was January 4th; but it is not shown, to our satisfaction, that the copy inspected was not the copy now in the defendants' hands.

Without stating all the considerations relied upon by the defendants, we have to say that we think that the court did not err in finding the true date of the contract to be January 24th. This finding, if correct, so far impeaches the honesty of the defendants as to greatly impair their credibility upon other points. We find, therefore, that the court did not err in not crediting their testimony as to the payment of $375 alleged to have been made.

II. The defendants set up a counter-claim for damages for failure to complete the house within the time agreed. It is admitted that the house was completed fourteen days later than the time fixed in the contract; but the defendants ordered extra work, and we are not prepared to say that the few additional days taken to complete the house was more than the time required to do the extra work.

2. ——: to build house: damages for delay.

III. The defendants claim that, in entering into the con-

tract whereby they agreed to give the plaintiff $2,775, they

3. ——: to convey lots and erect house: misrepresentation as to cost of house.

were deceived to their damage in the sum of $112.50 by the false and fraudulent statement of the plaintiff; that it was represented to them by plaintiff that the house would cost $1,400, and they say that sum was allowed for the house, whereas the house, in fact, cost only $1,287.50. The plaintiff testified, in substance, that the trade for the lots and house was in a lump, and that the house was not definitely put in at $1,400. If it should be conceded that the plaintiff said that the house would cost $1,400, his statement would not, we think, be more than an expression of his opinion at that time, and would not be such as we could hold to be fraudulent.

IV. The defendants claim damages for failure to construct the house properly. This claim is based upon an alleged

4. ARBITRATION and award: plaintiff not bound by.

award made by certain arbitrators. But the agreement to arbitrate appears to be an agreement solely between Mrs. Davidson and Fred Peterson & Co., the contractors who did the work. It is claimed, to be sure, that Peterson & Co. were authorized by the plaintiff to represent him in the arbitration and bind him by it. But the agreement does not purport to do so, nor do we think that the alleged authorization is sufficiently shown

V. The court below allowed an attorney's fee. It is contended by the defendants that in this the court erred. The

5. PRACTICE: recovery of attorney's fees on contract: time of filing affidavit: practice on trial de novo.

attorney's affidavit required by section 3 of chapter 185 of the Laws of 1880 does not appear to have been filed with the original papers, within the meaning of the statute as construed in *Wilkins v. Troutner*, 66 Iowa, 557. At the time of the trial below that case had probably not been reported; but, as this case is for trial *de novo*, the ruling above cited must, we think, be adhered to, even though, as the plaintiff claims, the precise question was not brought to the attention of the court below. We think that the attorney's fees must be disallowed. We see no other error. The decree accordingly is                    MODIFIED AND AFFIRMED.