CLARINDA GARRETT ET AL., Appellants, v. JESSE SLAVENS ET AL., Appellees.

**Fraudulent conveyances:** PRINCIPAL AND AGENT: EVIDENCE.  In an
1    action to cancel a conveyance and for an accounting on the ground that the conveyance was made in reliance upon false statements of the vendee that the land was not underlaid with coal, and that the vendee acted in the interests of an undisclosed coal company as principal, the evidence is held insufficient to show agency.

**False representations:** OPINION STATEMENTS.  Where knowledge as
2    to the extent of workable coal veins is equally accessible to the owner and prospective purchaser of land, and the same has not been determined by either, a statement by the purchaser that the lands were not underlaid with valuable coal deposits will be treated as a mere expression of opinion and will not authorize a decree cancelling the conveyance on the ground of fraud.

**Fraudulent conveyances:** RECONVEYANCE.  Equity will not require
3    a reconveyance of land, on the ground that the vendee fraudulently represented that there was no underlying coal, where the price paid for the surface was adequate, and the vendee had conveyed the coal rights to an innocent purchaser, and the vendor does not manifest a willingness to accept a partial reconveyance.

*Appeal from Jasper District Court.*— HON. BYRON W. PRESTON, *Judge.*

TUESDAY, NOVEMBER 21, 1905.

ACTION in equity to cancel and set aside a conveyance of real estate, for an accounting, etc. Upon trial, the court below dismissed the petition and gave judgment in favor of defendants for costs. Plaintiffs appeal.— *Affirmed.*

*G. M. Tripp* and *Carr, Hewitt, Parker & Wright,* for appellants.

*Ryan, Ryan & Ryan,* for appellees.

BISHOP, J.— In June, 1897, the plaintiff Clarinda Garrett was the owner of the land in question, consisting of eighty acres located in Jasper county, this state. There was a mortgage incumbrance on the land in the sum of about $2,200. In the month named she sold and conveyed the land, her husband and coplaintiff, John Garrett, joining in the deed, to the defendant Jesse Slavens; the consideration agreed upon being $3,000. Slavens assumed and agreed to pay the mortgage incumbrance, and paid the balance in cash to Mrs. Garrett. Some time thereafter — the date does not appear — Slavens sold and conveyed the coal underneath the surface of the land, and with some surface rights, to his co-defendant, the Jasper County Coal Company. The latter proceeded soon after to erect topworks, sink a shaft, and take out coal.

This action was commenced in September, 1898, although the trial was not had until in December, 1903. It is the contention of plaintiffs, as made in their petition, that the conveyance of said lands was procured from them by defendant Slavens by false representations, in this, that Slavens represented of his knowledge gained from prospecting which had previously been done that said lands were not underlaid with coal of any value, which representations plaintiffs relied upon in parting with their title for the con-

sideration stated; whereas, it is said, he (Slavens) knew that the land was richly underlaid with coal and of great value. It is then said that in making said purchase Slavens was acting as the agent and in the interests of the coal company, his codefendant, and that the coal company took title to the coal deposit with notice of the representations made by Slavens and was a party thereto.

The defendants answer separately. Slavens admits that he knew that prospecting for coal had been done on the land, and avers that the plaintiffs had equal knowledge on the subject with himself; he denies the representations alleged, and denies that at the time of his purchase he was the agent or was otherwise connected with the coal company. The coal company denied having any relations with Slavens at or prior to the time of his purchase; asserts that it paid full value and in good faith.

We shall first dispose of the case as against the coal company. In the evidence for plaintiffs in chief no effort was made to show any relationship between Slavens and the coal company. Called on his own behalf, Slavens testifies in positive terms that he bought and paid for the land on his own account, and that he was in no sense or to any extent acting for the coal company. The officers of the coal company testify in equally positive terms that Slavens was not procured or authorized to act for the company, and did not act on its behalf in making his purchase. Now the only evidence tending to contradiction appears in the cross-examination of Slavens, as a witness for the defense, and in the evidence of one Kegley, a witness called by plaintiffs in rebuttal. Slavens answered that before he made his purchase he had talked with one of the officers of the coal company respecting his contemplated purchase, and in that conversation something was said about a sale of the coal to the company in case he did purchase the lands. Kegley testified that, in a conversation had by him with an officer of the coal company, the

**1. FRAUDULENT CONVEYANCES: principal and agent: evidence.**

latter, in speaking of the Garrett land, said: " We have a man to make the purchase for us; it is Slavens." The trial court held that upon the record before it plaintiffs had not made out a case, and, without stopping to analyze, we agree that the decree as to the coal company should not be disturbed.

Now, as to the case against Slavens. It must be apparent that the possible relief that might be awarded could not affect the rights of the coal company; hence the utmost

2. FALSE REPRE-
SENTATIONS:
opinion state-
ments.

would be a decree for reconveyance of the surface, subject to the easement of the company, and an accounting as against him alone. As we read the record, the evidence makes it appear that the land had been prospected for coal, under consent of plaintiffs, some time before the sale. This was done, as we understand it, by drilling small holes into the earth, and bringing to the surface the matter found to determine what was the character of the formation. All agree that coal was discovered to exist in some quantity, and respecting this we are constrained to believe that plaintiffs 'were fully advised. The doubtful matter was as to the extent of the workable coal veins; that is, if the veins were sufficiently extensive to justify operation. And it would seem that this could be determined only by sinking a shaft, opening entries, etc. Should we find, therefore, that Slavens did represent to plaintiffs that coal did not exist in workable quantities, such could be considered only as an expression of his opinion in respect of the situation. The parties were dealing at arm's length, and all the authorities agree that in such cases an expression of opinion as to the existence or nonexistence of a fact condition cannot be construed into an actionable false representation. *Bondurant v. Crawford,* 22 Iowa, 40; *Swan v. Mathre,* 103 Iowa, 261; *Boddy v. Henry,* 113 Iowa, 462. In the very nature of things, Slavens could not know what were the conditions existing beneath the surface; what knowledge he did possess was at least equally accessible to the

plaintiffs.   Under such circumstances there could be no fraud.   *King v. Williams,* 71 Iowa, 74.

But, if all this were not true, there is no basis in the record for a decree in favor of plaintiffs.   Slavens could not be compelled to reconvey the land as he received it, and plaintiffs have not manifested a willingness to

3. FRAUDULENT
CONVEYANCES: receive a partial reconveyance.   Moreover, no
reconveyance. consideration of equity appears to require a re-conveyance of the surface rights, as confessedly the price paid by Slavens was the full value thereof.   Looking to the subject of an accounting, the demand of plaintiffs is for the rents and profits of the surface, as farm land, as against Slavens alone; and for the value of the coal taken from the land, which latter demand is made as against both Slavens and the coal company.   It will be sufficient to dispose of the whole matter by saying that the record is silent as to the value of the rents and profits of the surface, if any were there; and that, as to the coal taken out by the company, the evidence makes it clear that the mine was operated at a loss.

We conclude that the decree was right, and it is *affirmed.*