ROBERT J. LYNCH, Appellee, v. DES MOINES LIFE FINANCE COM-PANY et al., Appellants.

**CANCELLATION OF INSTRUMENTS:**  General Prayer for Relief.
1  A general prayer for equitable relief affords ample basis for a de-cree of cancellation of a written instrument for misrepresentation of a material fact, even though the petition—unquestioned in the trial court—contains no specific allegation of fraud.

**FRAUD:**  Fraudulent Representations—Fact (?) or Promise (?)  A rep-
2  resentation by a promoter of an *incomplete* incorporation that ar-rangements had been already made for the selection of a named party to fill an official position is a statement of fact.

**SALES:**  Rescission—Waiver by Inconsistent Conduct.  The fact that
3  the purchaser of corporate stock, after learning that the representa-

tions which induced the purchase would not be fulfilled, demanded the stock and prepared to advertise it for sale, in order to escape the predicament of being unable to pay for it, does not necessarily work an irrevocable waiver of the right to rescind.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

## APRIL 6, 1921.

### REHEARING DENIED OCTOBER 1, 1921.

ACTION in equity for the cancellation of a deed, and for the annulment of two certain promissory notes, one for $1,000 and another for $1,500. A deed was executed, to secure the payment of the latter note. The defendant Musgrave filed answer and counterclaim, asking judgment upon the $1,500 note, which was payable to him. The court found in favor of the Des Moines Life & Annuity Company and of the Iowa Loan & Trust Company, but entered judgment against the defendant Musgrave and the Des Moines Finance Company. They alone appeal. The further material facts are stated in the opinion.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger* and *Dunshee, Haines & Brody,* for appellants.

*W. H. McHenry* and *Corwin R. Bennett,* for appellee.

STEVENS, J.—I. The only close or difficult questions involved upon this appeal are those presented by the pleadings and the conduct of the plaintiff. The prayer of the petition is fairly clear, and asks the cancellation of the deed exe-

1. CANCELLATION OF INSTRU-MENTS: general prayer for relief.

cuted by plaintiff to the defendant Musgrave and the return of the two notes above referred to, for $1,000 and $1,500 respectively, and for such other and further relief as the court may find equitable in the premises, and for costs. The transactions involved grew out of a subscription by plaintiff for 500 shares of the capital stock of the Des Moines Life & Annuity Company, a corporation organized under the laws of Iowa. The defendant the Des Moines Life Finance Company was organized and incorporated for the purpose of selling stock, and financing the Life & Annuity

Company.   The defendant Musgrave was employed by the latter
to sell the shares of the capital stock of the former upon com-
mission.

On or about March 5, 1917, plaintiff, at the solicitation of
Musgrave, subscribed in writing for 500 shares of capital stock,
at $20 per share.   The terms of the subscription required the
cash payment of $2,500, which was to be applied to defray pro-
motion charges, including the agent's commission.   To meet
this requirement, the plaintiff borrowed $1,000 of the Iowa Loan
& Trust Company, giving a note therefor, signed by himself
and by his brother, as surety, and also executed a note for $1,500
to Musgrave, together with an instrument which in form was a
deed, but which all parties agree was intended as a mortgage,
conveying to him certain real estate in the city of Des Moines,
as security for the payment of the note.   Plaintiff testified that
he was induced to subscribe for the shares of stock by the repre-
sentations and promises of Musgrave that he would be appointed
medical director of the Life & Annuity Company, and that he
might pay for the stock out of the salary paid him by the com-
pany.

The disagreement of counsel on the question of pleadings
is as to the grounds upon which the relief prayed is sought.
The petition contains no specific allegation of fraud.   It is al-
leged therein that, on or about March 5, 1917, the date appearing
on the subscription contract, the deed, and the $1,500 note, the
plaintiff entered into a verbal contract with the Des Moines
Life & Finance Company, E. C. Musgrave, the Des Moines Life
& Annuity Company, and the Iowa Loan & Trust Company,
through the said Musgrave, their duly authorized agent, by
which it was agreed that, if plaintiff would purchase 500 shares
of the capital stock of the Life & Annuity Company, at the price
of $20 per share, he would be appointed and would become the
medical director of said company, at an annual salary of between
$3,000 and $5,000, which salary might be applied to the pay-
ment of the agreed price of the stock.   It is further alleged that:

"The plaintiff, relying upon the said oral contract, signed
and executed the written contract, and alleges that the said oral
contract was the *sole* and *only* consideration on which he entered
into the said written contract."

This is followed by allegations of the execution of three notes: one for $1,000, one for $1,500, and a third for $7,500. As stated, the $1,000 note was executed to the Iowa Loan & Trust Company, the $1,500 note to Musgrave, and the $7,500 note, we assume, to the Life & Annuity Company. It is further alleged that the defendant Finance Company, after the refusal of the defendants to carry out the alleged verbal contract, returned the $7,500 note to plaintiff, but has at all times refused to surrender the other two notes.

It is contended by counsel for plaintiff, in argument, that evidence of a verbal contract constituting the inducement of a party sought to be charged under a written contract to enter therein is admissible, and does not violate the rule that the terms of a written contract may not be varied or impeached by parol testimony. Without further discussion of this question, it is sufficient to say that the evidence introduced does not establish a verbal contract in any sense binding upon the Life & Annuity Company, or of the character alleged.

It is too manifest for serious discussion that the alleged verbal agreement to appoint plaintiff medical director of the Life & Annuity Company was not the sole consideration for the instruments signed by him. The petition specifically alleges that plaintiff agreed to pay $10,000 for the stock, for which he executed notes, as already stated. The only reasonable construction to be given to the language of the petition, it seems to us, is that the allegations of a verbal contract were intended to set forth the offer, understanding, or agreement claimed,— namely, that plaintiff would be appointed medical director of the Life & Annuity Company,—and that this was the primary inducement upon his part to sign the stock subscription and to execute the notes and deed, without which he would not have purchased the stock. The petition was not assailed by motion or demurrer.

Plaintiff testified that he was, at the time he signed the subscription for stock, engaged in the practice of medicine at Des Moines; that the defendant Musgrave on numerous occasions had solicited him to become a subscriber for stock in the Life & Annuity Company; that Musgrave represented and stated to plaintiff that he had taken up with the directors the matter

of plaintiff's appointment as medical director, and that it was all arranged; and that he would guarantee plaintiff that, if he would purchase 500 shares of stock for the amount named, he would be appointed medical director of the company. In this testimony, plaintiff is corroborated by his brother.

The objections urged by counsel to the testimony when offered were that it was incompetent, immaterial, and sought to vary and impeach the terms of a written instrument. As the examination proceeded, further objections were interposed to some of the questions, upon the grounds that same were incompetent, immaterial, and irrelevant; but at no time do counsel for defendant appear to have suggested to the court that the petition did not charge fraud, nor seek cancellation of the deed and other instruments upon that ground. They apparently tried the case, upon behalf of the defendants, upon the theory that plaintiff was seeking relief on the ground of a partial or complete failure of consideration. Counsel for plaintiff, however, on the other hand, seem to have tried the case in the court below upon the theory that plaintiff was induced to sign the subscription contract and to execute the other instruments by fraudulent representations and promises made to him by Musgrave; and that is his principal contention in this court. That plaintiff was ambitious to become the medical director of the new life insurance company, and that strong inducements were offered by Musgrave, to lead him to believe that he was to be appointed to that position, is abundantly shown by the record. Plaintiff testified, and his testimony upon this point is not disputed, that his financial condition was such that he could purchase shares of stock only upon condition that he be given a position with a salary attached, which could be applied for that purpose. The evidence clearly shows that the secretary of the Finance Company, immediately upon receipt of the subscription, sent for Musgrave, and inquired of him whether he had promised plaintiff the medical directorship of the company.

His testimony upon this point on cross-examination was as follows:

"Q. What was it you told them came into your head, the minute you heard of this subscription? (Mr. Bannister: Objected to as merely hearsay and incompetent, and not calling

for a conversation, and incompetent testimony.)    A.  When the subscription was brought to me, it came in the regular form. The sales manager brought it in with other subscriptions and laid it on my desk, and I said immediately: 'There is a pretty big subscription.  Was there any promises made, do you know, in the sale of this subscription?'  And the sales manager said, 'No, Musgrave says not.'  I said, 'I want to see Musgrave;' and he came in.  He was in one of the outer offices, and I said: 'Was there any promises made to Dr. Lynch on this subscription? I want to know, before I pay any commission.'  He said, as I remember it: 'Dr. Lynch is my candidate for medical director, but there is no binding promise, or any promises in any way. He has made his subscription, and is willing to take his chances to become medical director.''

A few days after the subscription and other papers were signed, plaintiff sought, and had, an interview with the president of the Finance Company at his office in Des Moines, in which the question of his appointment as medical director of the insurance company was the subject of discussion.  The parties do not agree as to what was said, Mr. Corry, the president, testifying that plaintiff, in answers to questions propounded to him at the time, said that Musgrave had made no definite promises of the medical directorship, and that he then informed plaintiff that Dr. Ryan was being considered for the position. Plaintiff testified that he returned to his office at once, and called Musgrave and talked with him over the telephone, telling him what Mr. Corry had said, and charging him with bad faith; and that Musgrave told him to have no fear,—that he would keep his agreement, and sell the stock without expense to him. Other testimony was introduced to the effect that plaintiff, while on a professional call at the Musgrave home, stated, in response to an inquiry from Mrs. Musgrave, that her husband had made him no promises.  According to this testimony, which is denied by plaintiff, the subject was introduced by Mrs. Musgrave. Plaintiff further testified that Mr. Musgrave, who accompanied him to the office of the Iowa Loan & Trust Company to borrow the $1,000, introduced him to one of the officers as the coming medical director of the new insurance company.  Musgrave denies that he made any of the representations referred to by

plaintiff and his brother in their testimony, but admits that he informed plaintiff that the position of medical director was open, and promised to work for his appointment.  The evidence does not establish a binding oral contract between plaintiff and the defendants that he would be appointed medical director, but we are persuaded that plaintiff was induced by the representations and statements of Musgrave to believe that he was sure to be appointed medical director, and that his subscription was obtained thereby.  As already stated, the petition asks general, equitable relief upon the facts stated.  This prayer has been given broad application and effect.  In *Reiger v. Turley*, 151 Iowa 491, we said:

"Under the general prayer of the original petition, it was competent for the court to grant any relief which appeared to be equitable upon the facts pleaded and proved, even though such relief had not been specifically demanded.  *  *  *  It was doubtless within the discretion of the court to have refused leave to amend the petition, or to have refused to pass upon plaintiff's right to a return of the advanced payment, and leave that claim to be fought out in another action.  Under the prayer for general relief, it was equally within its discretion to retain jurisdiction of the proceedings for the complete adjudication of every right which was fairly involved in or dependent upon the issues tendered by the pleadings, even though such relief be inconsistent with the specific relief prayed for."

Notwithstanding the fact that the testimony is insufficient to prove a binding oral agreement between plaintiff and defendants that he would be appointed medical director, the facts, so

2. FRAUD: fraudulent representations: fact (?) or promise (?)

far as set forth in the petition and the evidence, justify the decree of the court below, unless the representations shown were not of existing facts, and not such as he would have a right to rely upon.

It is contended by counsel for appellant that the testimony at most "shows merely a holding out of an opportunity for obtaining employment, always contingent upon being elected by the board of directors of the company, which was not yet formed," and that all promises, if any were made, were purely executory, and did not relate to existing facts; but we are not

inclined to agree with this contention. According to plaintiff's testimony, the representations of Musgrave went further than to promise his appointment as medical director when the company was organized. It was to the effect that he had definite information from the officers and promoters of the new organization that the appointment of plaintiff was already arranged, and would follow. This also presents a very close question, and the decision of it hangs largely upon one statement, or representation. The organization of the Life & Annuity Company was not then completed; but plaintiff derived his information largely from Musgrave, and may well have assumed that he and those engaged in its organization knew who would constitute the officers and board of directors, and that the representations were based upon information derived from a reliable source. The statement that the matter had already been arranged was of an existing fact; and, so far as appears, plaintiff had a right to rely thereon, and to act upon the theory that his appointment would be deferred only until the organization of the company would be completed. *Heitman v. Clancy*, 167 Iowa 58.

II. Appellant further relies upon the admitted fact that plaintiff, after he knew that he would not be appointed medical director, demanded his stock, and advertised the same for sale,

3. SALES: rescission: waiver by inconsistent conduct.

as constituting a waiver of the right to ask for rescission, and as fully barring and estopping him to demand this relief. The general doctrine that one who has been induced by fraud to execute a contract, if he desires to rescind the same, must, within a reasonable time thereafter, take steps for that purpose, is familiar. *Rawson v. Harger*, 48 Iowa 269; *Evans v. Montgomery*, 50 Iowa 325; *Moore v. Howe*, 115 Iowa 62; *German Sav. Bank v. Des Moines Nat. Bank*, 122 Iowa 737; *State Bank v. Brown*, 142 Iowa 190. The testimony of plaintiff upon this point is as follows:

"I never got to the point of trying to use my $7,500 worth of stock as collateral. I asked for my stock. It was advertised for sale. I made the request for the stock from Mr. Musgrave on the telephone, on the day I talked to Mr. Corry. I asked to have the stock delivered to me. I offered to keep my part of the agreement of paying for it. You know I never could have

paid for it. He understood at the beginning that I had no money. I made the demand of Mr. Musgrave over the telephone. He would not come back to the office after the application was signed up. I invited him back two or three times.

"Q. Did you ever make any demand for the stock from the secretary or any other officer of the company? A. I tried to explain to him the situation I was in. Q. Mr. Musgrave was not an officer, was he? A. He claimed he was running the whole company; he could do most anything that a man could do. Q. You never asked Mr. Corry or Mr. Lewis, however, for the issuance and delivery of your stock? A. I didn't think I was entitled to it at that time. Q. Why? Was the time up for the issuance of the stock? A. I don't remember. Q. You was not entitled to it because the company had not been organized,— is that the idea? A. I don't know. You know more about that than I do."

On or about the first of June, plaintiff wrote Mr. Corry, president of the Finance Company, the following letter:

"Pursuant to our conversation permit me to advise my stock is for sale as it was only on the understanding that I was to have medical directorship that I took the stock. From your statements I don't believe that there will be any use of bothering further except to say that unless the company sells my stock without any expense to me I will begin today to advertise the same so that it will be well advertised by the second."

On June 22d, the Finance Company returned the $7,500 to plaintiff, accompanied by the following letter:

"We beg to acknowledge receipt of your several favors in which you state that you will not perform the remainder of your agreement with the Des Moines Life Finance Company and that you will not receive and pay for the stock that you contracted for in the Des Moines Life & Annuity Company.

"This is to notify you that, because of your expressed intention of breaking your contract and refusal to carry out the same, the same has been canceled and the advance payment made for the expenses of promotion and organization has been

applied to the same as liquidated damages in accordance with the terms of the contract.

"We herewith return to you your note given for the stock in the Des Moines Life & Annuity Company in the following amount: $7,500. Trusting the above is satisfactory, we are."

The petition in this suit was filed on June 27, 1917. No stock was ever issued or delivered to plaintiff. His conduct touching this matter is not necessarily inconsistent with what followed. He was bound (without, according to his testimony, the means of meeting his obligation) by the terms of his subscription for stock to pay $10,000 therefor, and had already executed his notes for that amount, and conveyed a lot on Grand Avenue in the city of Des Moines, to secure the payment of one of the notes; and that he sought to extricate himself in some way, by getting rid of the stock, is not surprising, nor conclusive against his right of rescission. He acted promptly in the premises, and, within five days after the defendant Finance Company returned his $7,500 note, commenced this suit for the cancellation of the deed and the surrender of the remaining notes. We do not think he waived his right to demand rescission. He evidently did desire the stock only that it might in some way be disposed of, so as to relieve him from his embarrassment. This is indicated in his letter to Mr. Corry, as well as in his talk with him over the telephone. Defendants refused to return the $1,000 and $1,500 notes because of a provision in the stock subscription contract that failure to comply with the provisions thereof forfeited the initial payment. The evidence that plaintiff refused to carry out the terms of the subscription contract is the reference in the above letter to that fact, and the testimony of Mr. Corry that, one evening, presumably on or about the first of June, plaintiff called him by telephone, and said that he wanted the company to take the stock off his hands. These matters throw some light upon plaintiff's mental attitude at the time he demanded the stock. The final result of his negotiations was the return of the $7,500 note; the retention by defendant Musgrave of the $1,500 note and by the Finance Company of the proceeds of the $1,000 note which was still the property of the Iowa Loan & Trust Company; and their

refusal to surrender the same. The plea of waiver and estoppel is not sustained by the evidence.

Other questions are discussed by counsel, some of which would probably be decisive, if we accepted appellants' interpretation and construction of plaintiff's petition; but, as we have adopted a different construction thereof, we do not deem it necessary to refer separately or at length thereto. The decree of the court below is in accordance with the equities of the case, and is—*Affirmed.*

Evans, C. J., Weaver, Arthur, Faville, and De Graff, JJ., concur.