CHRIS H. BOYSEN, Appellee, v. J. M. PETERSEN, Appellant.

FRAUD: Fraudulent Representations—Opinion (?) or Fact (?)   A rep-
1   resentation may be one of fact *per se*, or it may be one of opinion
*per se*, or it may be neither *per se*.   In the latter case, whether the
representation or statement be *of fact* or *of opinion* depends essen-
tially on·the subject-matter of the transaction and on all the material
attending facts and circumstances thereof; and the court must, in its
instructions, clearly differentiate between the two questions.   So held
where the representation was as to presence of rock on the premises.

FRAUD: Delay—Effect.   Long delay (short of the running of the stat-
2   ute of limitation) does not bar an action for damages for deceit in
the sale of land.

FRAUD: Fraudulent Representations—Right to Rely on Representation.
3   A purchaser of real estate who makes an unhampered examination
of the premises prior to purchase may not rely on representations of
any fact as to the truth of which he can reasonably assure himself.

ELECTION OF REMEDIES: Conclusive Election—Non-applicability of
4   Doctrine.  .A party who elects to pursue one of two or more concur-
rent, inconsistent remedies is absolutely bound thereby; but the pur-
chaser of land who, subsequent to the purchase, pays the contract
price by reconveying to the vendor is not thereby necessarily
estopped to sue for false representation in the original sale.

Headnote 1:   26 C. J. pp. 1083, 1084; 27 C. J. p. 77.   Headnote 2:   27
C. J. p. 26.   Headnote 3:   26 C. J. pp. 1163, 1203.   Headnote 4:   20 C. J.
p. 40; 27 C. J. p. 22 (Anno.)

Headnote 3:   27 R. C. L. 361.   Headnote 4:   9 R. C. L. 960.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

JANUARY 18, 1927.

REHEARING DENIED MAY 13, 1927.

Action to recover damages in the sum of $8,000 for alleged
false representation by the defendant to plaintiff in the sale of
a Clinton County, Iowa, farm.   The jury returned a verdict for
$5,000, which was reduced by the trial court to $3,000, with the
right of plaintiff to file a remittitur and accept said sum within
20 days; otherwise motion for new trial would be sustained.

Plaintiff did file a written acceptance for $3,000, with interest, and thereupon judgment was entered in said amount. Defendant appeals.—*Reversed.*

*F. W. Ellis* and *J. E. Purcell,* for appellant.

*E. L. Miller* and *W. J. Welsh,* for appellee.

De Graff, J.—This is an action in tort, based on deceit. Plaintiff ·in his petition pleaded both an oral warranty and a fraudulent representation. It is true that a warranty may be made the basis of fraud, provided that the plaintiff pleads it as fraud, and makes the necessary allegations to constitute fraud. See *Hughes v. Funston & Smith,* 23 Iowa 257.

Fraud, however, is distinguishable from breach of warranty. A warranty rests on contract, while fraudulent representation has no element of contract, and is essentially a tort. 1 Black on Rescission and Cancellation 46, Section 23. See, also, *American Fruit Prod. Co. v. Davenport V. & P. Works,* 172 Iowa 683, 699; *Mast & Co. v. Pearce & Cowan,* 58 Iowa 579.

The trial court in the instant case correctly charged the jury that the ·plaintiff failed to prove any warranty ·as alleged by him; "so that claim you should not consider."

The essence of this action is stated in an instruction to the jury, to wit: That the defendant stated to the plaintiff, before the land was purchased by plaintiff, that the land, except 30 acres then in pasture, was free from stone and rock;· that the plaintiff relied upon said representation in making the purchase; that said statement, when made, was in fact untrue, and known to be untrue by the defendant; and that the plaintiff was caused damage thereby in some amount by reason thereof.

1. Fraud: fraudulent representations: opinion (?) or fact (?)

The defendant, for answer to plaintiff's petition, filed a general denial, and further alleged that the land in question was reconveyed by plaintiff to one John L. Wolfe (contract holder at the time of the sale), in consideration of the release of plaintiff from his obligations on the mortgages evidencing the balance of the deferred purchase price, and, in further consideration between plaintiff and Wolfe, that plaintiff should drop any claim for damages against defendant by reason "of any rock on said

premises,'' and that plaintiff should lease said premises from Wolfe.

I. The primary proposition of the appellant is that the alleged fraudulent representation is a matter of opinion, if construed in the light of the physical facts and attending circumstances surrounding the transaction at the time the representation was made, and that the trial court erred in refusing a requested instruction which, in effect, differentiated matters of opinion from positive assertions of fact.

The appellant in his brief assigns certain specific propositions as the basis for reversible error: (1) That the testimony viewed in its entirety is insufficient to show fraudulent representation intended to deceive the plaintiff; (2) that, under all the testimony, the jury could have found the alleged representation, in the light of the attending circumstances, a matter of opinion, and the failure of the court upon request to instruct in this particular was error; (3) that the court erred in instructing the jury that plaintiff was justified in relying upon defendant's statements which ''you find the defendant did, in fact, make as to such rock and stone,'' and in refusing to give a requested instruction in reference thereto that, if the jury found that such statements were matters of opinion only, and were true, so far as the defendant knew, and not intended to deceive the plaintiff, then the plaintiff cannot recover; (4) that plaintiff waived any claim for damage by his election to rescind the contract of purchase, and by his reconveyance of the land to the party receiving the consideration.

The claims of appellant make necessary a review of the material facts, in order to visualize the situation at the time the alleged misrepresentation was made. The plaintiff was an experienced farmer. He had just sold his farm, and was in the market to purchase another. It is undisputed that plaintiff, in July, 1919, purchased the 160-acre farm in question for $42,000. At that time, one John L. Wolfe held a contract of purchase of said land from the defendant, who was the legal title holder. Plaintiff knew this, and at the time the deal was consummated in Wolfe's office, plaintiff paid $9,000 as his initial payment, and executed two notes to John L. Wolfe, one for $20,000, secured by a first mortgage on said land, and another for $13,000, secured by a second mortgage on said land. A little later, the defendant

executed a deed to the plaintiff in conformity to the agreement.

The introductory sentence of counsel for appellant in argument is that this lawsuit finds its origin in the fatuous real estate speculation which swept the state in the years 1919 and 1920. We do not view this fact, even if true, as of particular moment. It may be that the plaintiff, at the time in question, was indulging in the luxury of land speculation, and there is some evidence to sustain the belief that his later engulfment is chargeable to this fact.

Counsel for appellant also urge that the fact that this plaintiff discovered the pleaded fraud the following spring (1920) after the purchase, and did not commence this action against the

2. FRAUD: delay: effect.

defendant until May, 1924, should be taken into consideration, as bearing upon the fraudulent character of the alleged representation. This fact, as well as his leasing the farm for three years after his surrender of the title, were proper matters for the consideration of the jury, as bearing on the credibility of the plaintiff. Plaintiff's delay for more than three years in filing suit after discovery of the alleged fraud, however, does not bar the action. The statutory limitation had not run. Plaintiff did not institute an action in equity for rescission. Had he done so, he would have been required to act promptly. Plaintiff had an election of remedies. He could have, within a reasonable time, offered to place the vendor *in statu quo*, and when the vendor refused, could have kept his tender good, and have gone into a court of equity to cancel and rescind the contract, and asked judgment for the consideration paid; or he could have, within a reasonable time, canceled and rescinded the contract, by offering to place the vendor *in statu quo,* and when the vendor refused, could have kept his tender good, and sued at law for the purchase price; or he could have affirmed the contract, and sued at law for damages. *Kuehl v. Parmenter,* 195 Iowa 497; *Lambertson v. National Inv. & Fin. Co.,* 200 Iowa 527.

We turn again to the record facts. Prior to the consummation of the contract in question, plaintiff, in company with defendant Petersen and one Jesse Boysen, a second cousin of plaintiff's, inspected the farm. It was at this time that the alleged representation as to rock and stone was made. It is to be observed that no representation is claimed to have been made,

nor was any question put to the defendant by plaintiff, as to the character of the soil, its productivity, or its fitness in any respect for agricultural purposes. Nobody asked the plaintiff "to go to any particular place" on this inspection tour. Everybody observed loose rock in the pasture and the stone quarry there, and it was these conditions that provoked the question and answer, presently noted, upon which the alleged false representation is based. At the moment of time when the inquiry was made by plaintiff as to "other stone and rock," his attention had been called to a very large boulder or niggerhead in the field, and he stood facing a stone quarry about 100 feet long, with a sheer perpendicular face 20 feet high; and the rock approached, according to his own statement, in one place a foot and a half of the top soil, and all along the quarry, about two feet. It was not the loose rock on the surface that affected the value of the farm, but the sub-rock under the surface of the soil. The rock which was the subject of conversation clearly had reference to boulders, loose rock, and outcroppings. The physical facts in this case speak louder than the words of any witness; and it was not until the land was plowed that it was discovered that in certain spots on this land the under-surface condition prevented the proper cultivation of the soil, and that in those places moisture was not retained, thereby reducing the value of the crops attempted to be raised.

The basic question in this case involves the fact side, and whether the trial court, in the statement of the applicable legal principle, correctly instructed the jury, in the light of the circumstances attending and characterizing the statement alleged to be fraudulent. The court did not, as requested, differentiate matters of opinion from positive assertions of fact, and the jury was not instructed that the claimed representation should be construed in the light of the physical facts and attending circumstances surrounding the transaction at the time the representation was made. According to the testimony of plaintiff, he asked Petersen:

"Is there any rock outside of this pasture? Then he [Petersen] showed two points across the creek, kinda white weeds growing, and he said, 'There where you see the weeds is the only place there is rocks.' The weeds were in the pasture. There is loose rock in the pasture just as you go through the

barnyard. There was loose rock all around there. **When you**
get across the creek, there is a stone quarry in front of you.''

Plaintiff's witness Jesse Boysen, one of the three persons
present at the time of the inspection, testified:

''The only thing I remember relative to the presence of rock
on that place was when we left the buildings, and we went across
the creek, and we looked back and could see on both sides adja-
cent to the creek quite a few rocks which Mr. Boysen knew of.
They had spoken of them before. I think Mr. Boysen asked
Petersen to tell if that was all the rock on the place, and Petersen
said, 'There is one big rock upon the hill,' and he pointed south.
That is all I heard relative to stone on the place.''

At the time in question, the land had growing crops thereon.
There was a tract of about 40 acres of oats in shock. There was
another oat field west of the 40 acres, and also a field of corn.
The defendant Petersen testified:

''We came back, and at a certain place, where I couldn't
just recall, he [plaintiff] asked me if there was any more rock
than in the hog pasture. I told him 'Yes,' and also about the
boulder. They asked me only once whether there was any more
rock than there was in the hog pasture. I told them, 'Yes,'
there was a boulder over across a ways. We were right in the
quarry. I bought the farm in the fall of 1916. I never worked
this farm personally. My man [tenant] said he had struck rock
in certain places on the south.''

Other witnesses for the plaintiff who were acquainted with
the farm testified as to the presence of rock. One Behr lived on
the place three years. He testified:

''It is pretty hard to judge as to the presence of stone or
rock on that place. It runs off and on right along. It [the
rock] is all the way from four inches to a foot down, covered
with black soil. There are four spots where there is stone out-
side the pasture when I was there.''

Another witness, Charles Smith, was engaged in the busi-
ness of farming, and had farmed this place in the year 1920.
Plaintiff, Boysen, moved on when Smith moved off. Smith testi-
fied:

''We found outcropping of stone and rock in a number of
different places. Outside of the pasture there were, I believe,
two outcroppings of rock west of the house. Roughly, I should

judge a dozen acres were rendered untillable by outcroppings of rock.''

One J. H. Thiesen lived in the vicinity of this farm for about 24 years, and was engaged in farming. He owned the farm in question for 12 years. He testified:

''The rock that really crops out doesn't show much; but when you cultivate it, and when you come to a dry season, your crop is always fired. South of the pasture there were nigger-heads which we blasted out. There is one yet, but it was so big we couldn't move it. I don't think there are places there where there isn't any soil. A person going to look at that quarry would know sure there was rock under that land,—they couldn't help it.''

A study of the record makes it quite apparent that the alleged false representation must be construed in the light of the physical facts and the circumstances surrounding the transaction. *Scienter* cannot be ignored. Plaintiff was not buying the land ''unsight, unseen;'' and the defendant was entitled to have the jury told whether the alleged representation, claimed to have been made, had reference to surface and exposed rock or to rock underneath the surface. The trial court treated the alleged representation as a positive assertion of fact, without any limitation. This was error.

It is a well established doctrine that *scienter* may be proved by showing (1) actual knowledge of the false representation; (2) that the representation was made as of the knowledge of the party making it, or in such unqualified and positive terms as to create the implication that he had actual knowledge of the fact stated; or (3) that the special situation or means of knowledge of the representor were such as to make it his duty to know as to the truth or falsity of the representation.

The foregoing principle is illustrated in many of our cases. Each case, however, must rest on its own facts and circumstances, as applied to the subject-matter, and must be interpreted by the attending facts and circumstances. It is for the jury, under proper instruction, to determine the intent and content of the representation made.

The vantage ground occupied by the representor is an important consideration, and whether such person is bound to know the truth of the statement made. A false representation to

a purchaser that the title to land is clear of incumbrance is a fraudulent representation. *Riley v. Bell,* 120 Iowa 618. That a designated tract of land contained a given number of acres, and that only a trifling part thereof was within the boundaries of a lake, which was visible to both vendor and vendee, was held to be a statement of fact, on which the vendee had a right to rely. *Rinella v. Faylor,* 190 Iowa 707. That a lot extended to an alley, whereas the premises did not, but lacked 35 feet or more of doing so, was an assertion of fact, and, if the vendee was induced to act to his damage by reason thereof, the representor was liable. *Davis v. Central Land Co.,* 162 Iowa 269. It is quite obvious that a vendee, viewing land with the vendor for the purpose of bargain and sale, has a right to assume that the vendor knows the boundary lines, the character of the title and estate, or any other positive assertion of fact which constitutes an inducement to purchase.

In *Longshore v. Jack & Co.,* 30 Iowa 298, a representation that involved the number of acres of wood on certain land was an expression of opinion. In *Rawson v. Harger,* 48 Iowa 269, a representation which involved the validity of a patent was held merely the expression of opinion and a legal conclusion. In *Sweney v. Davidson,* 68 Iowa 386, a representation as to what a house would cost was held an expression of opinion. In *Garrett v. Slavens,* 129 Iowa 107, a representation as to the extent of workable coal on a certain property was in the same category. See *Holmes v. Rivers,* 145 Iowa 702; *Creamer v. Stevens,* 192 Iowa 920; *Frost v. Rich,* 199 Iowa 421; *Tott v. Duggan,* 199 Iowa 238.

There is no particular purpose served in an attempt to differentiate the decisions, although it is obvious that there is a line of demarcation between positive assertion and a matter of opinion. See *Hinman v. Treinen,* 196 Iowa 701; *Barr v. Butler,* 197 Iowa 575; *Eckstein v. Storck,* 199 Iowa 1375.

It goes without saying that it was the duty of the plaintiff in the case at bar to use ordinary care in making an inspection of the farm, and he must be charged with the knowledge of all

3. FRAUD: fraudulent representations: right to rely on representation.

things that he could reasonably have discovered as to rock or stone on the farm. The point we emphasize is that the mere statement of an honest opinion, as distinguished from a positive

assertion of fact, will not amount to fraud, even though such opinion be incorrect. As said in *Owens v. Norwood-White Coal Co.*, 188 Iowa 1092:

"It is only when the statements become, in legal effect, representations of fact, or the expression of opinion is insincere, and made with ulterior purpose, to deceive or mislead the injured person, that they may be treated as fraudulent. * * * but the answer to that inquiry, ordinarily at least, is to be deduced, not alone from the words employed, but also from the circumstances attending and characterizing their use; and this, under all ordinary circumstances, is a jury question."

It is this matter to which the basic criticism of the appellant refers. We consider his point well taken.

II. Do the facts in this case bring the plaintiff within the rule of estoppel or of election of remedies? It is alleged by the defendant in answer that, at the time of the execution of the deed to plaintiff by the defendant, the plaintiff "well knew that the said defendant was not the owner of said land, but that same was owned by John L. Wolfe;" and that "plaintiff requested said John L. Wolfe to take back the land and release plaintiff from his obligations to pay for the same, and, as part consideration therefor, said Wolfe agreed so to do, provided said plaintiff dropped any claimed damages by reason of any rock on said premises;" and that said land was reconveyed by deed from plaintiff to Wolfe.

*4. ELECTION OF REMEDIES: conclusive election: non-applicability of doctrine.*

It is undisputed in the record that John L. Wolfe was the holder of the contract of sale of this land when the deed was executed by the defendant, as title holder, to the plaintiff, and that, when the contract of sale between plaintiff and defendant was consummated, and the deed executed and delivered, as aforesaid, notes and mortgages in the sum of $33,000. were executed by plaintiff and delivered to Wolfe for the deferred balance of the consideration of $42,000. The evidence also shows that both the defendant Petersen and Jesse Boysen signed the $13,000 note with the plaintiff, Chris Boysen, but in what capacity, the record does not disclose. It is also undisputed that a reconveyance was made of the land by plaintiff to Wolfe, and that the latter canceled the notes and mortgages and returned them to the plaintiff. This transaction happened in the latter part of

February or in early March, 1924. The instant suit was commenced in May, 1924.

The only question of fact in dispute in this matter is whether Wolfe canceled the notes and mortgages and accepted a reconveyance of the land in part consideration that plaintiff agreed to release or waive any claim, if any he had against the defendant, for damages based on misrepresentation. Wolfe affirms this to be the fact. Plaintiff and his wife deny the fact. The trial court instructed that if, as a part of the consideration for the surrender of the notes and the release of the mortgages by Wolfe and the acceptance by Wolfe of the deed, plaintiff agreed to release or waive his claim for damages against the defendant for misrepresentation, that would be a good consideration for his so doing, and, "if you so find, your verdict should be for the defendant;" and further instructed that "the burden is on the defendant to prove, by a preponderance of the evidence, that plaintiff did so agree to so do."

It must be conceded that, when two or more concurrent remedies exist, between which a party has the right to elect, and the remedies thus open to him are inconsistent, and the party actually brings an action, or by some other decisive act, with knowledge of the facts, indicates his choice between the inconsistent remedies, he is bound by his election. 20 Corpus Juris 17, Section 12 et seq.; Zimmerman v. Robinson & Co., 128 Iowa 72.

The defense pleaded was an affirmative defense. It was submitted to the jury under a proper instruction. The contract of purchase between plaintiff and defendant was not, in a legal sense, rescinded, but was fully performed. By the cancellation of the notes and mortgages and the reconveyance of the property, the purchase price was paid. It may be that plaintiff, by his failure to act promptly, lost his right to rescind, but this did not, as pointed out herein, cause a loss of his right to sue for damages. Whether the plaintiff lost that right, as contended by defendant in his answer, was a disputed fact question, and was properly submitted to the jury for determination.

The judgment entered on the verdict must be, and is,— *Reversed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.